UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ROBB EVANS AND ASSOCIATES
AS COURT APPOINTED RECEIVER
IN THE IN RE SANCTUARY BELIZE
LITIGATION

           Plaintiff                         CASE NO.: 8:21-CV-2049

VS.

JORGE DIAZ-CUETO
AND
BELLAMAR ESTATES, LTD

           Defendants

_____/ (CORRECTED -JANUARY 28, 2022)

**<u>DEFENDANTS' MOTION TO DISMISS WITH EMBEDDED MEMORANDUM OF LAW</u>**

Defendants, Jorge Diaz Cueto ("Cueto") and BellaMar Estates Ltd., ("Bella Mar") file this Motion To Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(B)(2), for forum non conveniens, improper venue pursuant to Fed. R. Civ. P. 12(B)(3) and failure to state a cause of action pursuant to Fed. R. Civ. P. 12(B)(6) and in support thereof state as follows:

## I.                    __INTRODUCTION__

This case is yet another example of overreach by Plaintiff in its continued quest to invalidate an otherwise legal and enforceable purchase and sale agreement between two legal entities for the purchase of real property located in the Commonwealth of The Bahamas. Plaintiff brought this action in total disregard of the sovereignty of the Bahamas and Due Process protections afforded to Defendants. At all times during the transactions the parties were represented by legal counsel and after due diligence and verifications were conducted and concluded.

Plaintiff's Complaint must be dismissed on several independent grounds, including lack of personal jurisdiction, forum non conveniens, improper venue, and for failure to state a claim against Defendants, Cueto and Bella Mar.

First, Plaintiff improperly seeks to have the United States District Court in Maryland exercise personal jurisdiction over Defendants, Cueto (a Florida resident) and Bella Mar (a Bahamian Corporation), despite the fact neither Bella Mar nor Cueto maintains any offices,

facilities or other presence in Maryland, has any assets in Maryland, conducts any business Maryland, and therefore does not have sufficient contacts with Maryland that would render either subject to a lawsuit in this District. Thus, Plaintiff, who bears the burden of establishing this Court's jurisdiction over Bella Mar and Cueto, failed to establish the "minimum contacts" necessary for a Court to assert personal jurisdiction.

Second, the agreement that is the subject of this litigation was not executed in this State, the defendants are non-residents of this State and the property that is the subject of this action is located in Bahamas, a foreign country. Accordingly, this case should be dismissed for lack of venue under Federal Rule of Civil Procedure 12(b)(3). The Agreement between the parties has a mandatory venue provision as well as choice of law provision that is binding and mandatory, and the Defendants seek to enforce the provision which is discussed more fully below.

Third, Plaintiff claims that the funds at issue are receivership property as the funds are related to the "Sanctuary Belize Litigation". However, the funds paid to Bella Mar for the purchase of the property

were provided by an independent investor and have no relation to the Sanctuary Belize litigation.

Fourth, Defendant Cueto, an individual, cannot be held personally liable for the debts of Bella Mar.

Fifth, the facts alleged by Plaintiff failed to state a cause of action for any of the relief requested. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

Bella Mar Estates Ltd, ("Bella Mar"), a Bahamian corporation, owned certain parcels of land located on Long Island, in the Commonwealth of the Bahamas("Bahamas").  The property consisted of 324 acres of land commonly known as the Ellis Tract, the Rosanna Tract, and the Culmer Tract, and 100 acres of land commonly known as the Francis Tract (collectively referred to as the "Property").

Newport Group, LLC, ("Newport") a Wyoming limited liability company, contemplated purchasing the Property and retained Bahamian real estate attorney, Elliot Lockhart, QC, to represent Newport in the transaction.   Attorney Lockhart conducted exhaustive due diligence,

including engaging a title company.    At the conclusion of the due diligence investigation, Attorney Lockhart opined that Bella Mar had clear, marketable title to the Property.   See Affidavit of Elliot Lockhart, QC, and opinion expressed by Elliot Lockhart, QC attached hereto a composite **Exhibit A**.    Additionally, Bahamian attorney and current Prime Minister of Bahamas, Philip Davis also opined that Bella Mar had good title to the Property. As part of the due diligence investigation, an independent appraisal of the Property was performed and estimated the Property's fair market value at $6,960,000.00.

After Bella Mar's ownership of the Property and the fair market value of the Property were verified and confirmed, Newport agreed to purchase the Property.   On or about August 17, 2017 Bella Mar and Newport entered into an "Agreement For Sale" ("Agreement") for the purchase and sale of the Property.   Newport agreed to pay the purchase price of $4,000,000.00 (the "Initial Purchase Price") as follows:

-Initial Deposit - $750k

-$100K per month for 12 months

- $120K per month for 10 months

-Final Payment of $130K on January 18, 2021.

In exchange, Bella Mar agreed to convey marketable title to the Property to Newport upon payment of the purchase price.  A copy of the Purchase and Sale Agreement is attached hereto as **Exhibit B**. Subsequently, a structure was allegedly discovered on the Rosanna Tract and, as a result, the purchase price was reduced to $2,800,000.00, (the "Reduced Purchase Price").   A copy of the amendment is attached hereto as **Exhibit C**.

Newport made the initial payments totaling approximately $1,065,000.00 with funds provided by Matthew Bowyer.  See Affidavit of Matthew Bowyer attached hereto as **Exhibit D**. Thereafter, Newport defaulted by failing to make the monthly payment due August 18, 2018. On September 4, 2018, Bella Mar notified Newport of the breach, and demanded that Newport cure the breach and bring the account current. Despite repeated demand, Newport failed to cure the default.   As a result, Newport forfeited the funds paid to Bella Mar, to date, as consideration for the fact that Bella Mar had taken the property off the market and had cease marketing the property for sale.

Plaintiff brought the instant action seeking a return of the $1,065,000.00 paid to Bella Mar claiming, *inter alia*, that the $1,065,000.00 paid to Bella Mar was a fraudulent transfer of receivership property, notwithstanding substantive documentary evidence provided to Plaintiff that Bella Mar was entitled to the payments.  During all relevant times that payments were being made by Newport, the Federal Trade Commission had not initiated action against Sanctuary Belize.   There is no privity of contract between Sanctuary Belize and Defendants,   The Defendants in this case never did any business or had any contacts with Sanctuary Belize.  Upon information and belief that Newport had no contracts or business dealing with Sanctuary Belize.  For the reasons set forth below, Plaintiff's complaint should be dismissed with prejudice.

III.                             <u>DISCUSSION</u>

A. **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR LACK OF PERSONAL JURISDICTION**

Rule 12(b)(2) provides for the dismissal of actions and claims where the Court lacks personal jurisdiction over a defendant. See Fed. R. Civ. P. 12(b)(2). In reviewing a Rule 12(b)(2) motion, Plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292, 1295 (10th Cir.1999). For purposes of a motion to dismiss, the allegations of the complaint must be taken as true unless contradicted by affidavits submitted by the defendant. *Behagen v. Amateur Basketball Ass'n. of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). To establish a prima facie case for personal jurisdiction, Plaintiff must first establish that the defendant is amenable to service in the forum state. *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206,1209 (10th Cir. 2000). A non-resident defendant is amenable to service if a federal statute provides for such service or if a forum state's long-arm statute subjects the non-resident defendant to the jurisdiction of a court within the forum state. Fed. R. Civ. P. Rule 4(k).

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman,* 571

U.S. 117, 125, 134 S. Ct. 746, 753, 187 L.Ed.2d 624 (2014). This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. Rule of Civ. Proc. 4(k)(1)(A). See *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). Further, the Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Determining whether personal jurisdiction can be exercised over non-resident defendants, (like Cueto and Bella Mar) involves a two-part inquiry: (1) whether the exercise of jurisdiction is appropriate pursuant to forum's long-arm statute, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); and (2) whether exercising jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Id*. The second part of the inquiry asks whether there are sufficient "minimum contacts . . . such that maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945).

Thus, although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Therefore, for a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a

substantial connection with the forum State. *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). The relationship must arise out of contacts that the "defendant *himself* " creates with the forum State because the due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. See *World–Wide Volkswagen Corp., supra,* at 291–292, 100 S.Ct. 559; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Courts have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff and the forum State. See *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *Hanson v. Denckla,* 357 U.S. 235, 253–254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (holding that a Florida court could not exercise personal jurisdiction over a trustee in Delaware based

solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there); *World–Wide Volkswagen Corp., supra,* at 298, 100 S. Ct. 559 (explaining that Oklahoma courts could not exercise personal jurisdiction over an automobile distributor that supplies New York, New Jersey, and Connecticut dealers based only on an automobile purchaser's act of driving on Oklahoma highways).   Therefore, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant′s due process rights are violated." *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980).

### 1. <u>Plaintiff Failed to Satisfy Maryland's Long-Arm Statute</u>

Plaintiff's Complaint fails to satisfy the first part of the jurisdictional inquiry whether the exercise of jurisdiction is appropriate pursuant to forum's long-arm statute as the Complaint failed to invoke any provision of Maryland's long-arm statute applicable to Cueto or Bella Mar or demonstrate that Cueto or Bella Mar have undertaken any of the activities enumerated in the long-arm statute.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. See *Snyder v. Hampton Indus., Inc*., 521 F. Supp. 130 (D. Md. 1981), aff'd, 758 F2d 649 (4th Cir. 1985). Maryland's long-arm statute, codified at Md. Code (2013 Repl. Vol., 2017 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J.") authorizes personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

In this case, Plaintiff's personal jurisdictional statement, contained exclusively in Paragraph 17 of the Complaint, alleges that this Court has jurisdiction over Defendants by virtue of 28 USC § 754 and 1692, and Fed. R. Civ. P. 4(k)(1)(C).   However, none of the provisions cited by Plaintiff confer personal jurisdiction over Defendants. For example, 28 USC § 754 provides that "[A] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof".  Similarly, 28 USC § 1692 provides that, "[I]n proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.   However, although both Sections 745 and 1692 provide *in rem* jurisdiction over property located in different districts, neither section provides *in personam* personal jurisdiction over Defendants. Moreover, Sections 754 and 1692 provides

jurisdiction over property located in the contiguous United States but does not provide jurisdiction over property located in a foreign country. Indeed, Plaintiff failed to allege any facts sufficient to establish that Cueto or Bella Mar have undertaken any of the activities enumerated in the long-arm statute. Specifically, Plaintiff failed to allege that Cueto or Bella Mar transacted any business or performed any character of work or service in Maryland; contracted to supply goods, food, services, or manufactured products in Maryland; caused tortious injury in the Maryland by an act or omission in Maryland; caused tortious injury in Maryland or outside Maryland by an act or omission outside Maryland; has an interest in, uses, or possesses real property in Maryland; or contracted to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within Maryland at the time the contract was made. In fact, Plaintiff has not identified the subsection(s) of the Maryland's long-arm statute that allegedly confer jurisdiction over Defendants, Cueto and/or Bella Mar.

Accordingly, the Complaint should be dismissed for lack of personal jurisdiction as Plaintiff has failed to demonstrate that

Defendants Cueto and Bella Mar are subject to the reach of Maryland's long-arm statute.

## 2. <u>Plaintiff Failed To Satisfy the Due Process Clause</u>

Plaintiff also failed to satisfy the second part of the two-part jurisdictional inquiry as the Complaint failed to allege sufficient material facts to establish that this Court's jurisdiction over Cueto and Bella Mar comports with the due process protections afforded by the Constitution.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Due process requires that two elements be established: (1) the defendant must have certain "minimum contacts" with the forum state; and (2) the maintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co*., 326 U.S. at 316. "Minimum Contacts within the forum may give rise to two types of personal jurisdiction: specific or general jurisdiction." See *Helicopteros Nacionales de Colombia, S.A*,

466 U.S. at 414-15. The analytical framework for determining whether minimum contacts exist differs according to which type of personal jurisdiction—general or specific—is alleged. *See ESAB Grp. v. Centricut,* 126 F.3d 617, 623–24 (4th Cir. 1997). Here, Plaintiff has not and cannot establish either specific or general jurisdiction.

### A. This Court Lack Specific Jurisdiction Over Cueto and Bella Mar

A court may exercise specific jurisdiction over a defendant if the cause of action arises out of or relates to a defendant's contacts with the forum state.  See *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).   A defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." *Id. World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Under this standard, 'it is essential in each case that there be some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws'". See *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Further, "[i]t is well established that a single act can support jurisdiction if that act has a 'substantial connection' with the forum and gives rise to, or figures prominently in, the cause of action under consideration." *Campbell v. Johnson & Towers, Inc.,* 123 F. Supp. 2d 329, 335 (D.S.C. 1999); *see also Chung v. NANA Development Corp.,* 783 F.2d 1124, 1131 (4th Cir. 1986).

Accordingly, specific personal jurisdiction is lacking here as neither Cueto nor Bella Mar did anything to "purposefully avail themselves of the privilege of conducting activities" in Maryland and could not "reasonably anticipate being hailed into [this] court."

  **B. This Court Lack General Jurisdiction Over Cueto and Bella Mar.**

General jurisdiction may be exercised by the court upon a showing that the defendant's contacts in the forum state are of a "continuous and systematic" nature. *See Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction. See *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.,* 682 F.3d 292, 301 (4th Cir. 2012). For example, the corporate operations within the state must be so substantial and of such an extensive nature as to justify suit against it on all causes of action dealing with matters entirely distinct from the instant litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing *International Shoe,* 326 U.S. at 318, 66 S.Ct. 154). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile and for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," *i.e.*, its principal place of business or place of incorporation. *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 138, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (holding request to extend general jurisdiction to include every state in which a corporation

"engages in a substantial, continuous, and systematic course of business"

"unacceptably grasping").

Factors that weigh against general jurisdiction include a lack of business or a business license in the forum, *Helicopteros Nacionales de Colombia, S.A*, 466 U.S. at 416, a lack of property ownership in the forum, *Nat'l Enquirer, Inc. v. News Group News, Ltd*., 670 F. Supp. 962, 966-67 (S.D. Fla. 1987), or a lack of any bank accounts, telephone listings, or mailing addresses in the forum. *Id.*

Bella Mar is not subject to general jurisdiction in Maryland as Bella Mar has no employees, assets, bank accounts, real property, personal property, offices, or other facilities in Maryland. Further, Bella Mar is not licensed to do business in Maryland, does not have a registered agent for service of process in Maryland, and has no phone numbers or mailing addresses in Maryland. Similarly, Cueto is not subject to general jurisdiction as Cueto has no assets, bank accounts, real property, personal property, offices, or other facilities in Maryland.

## C. Exercising Jurisdiction Over Bella Mar and Cueto Does Not Comport With Fair Play And Substantial Justice

After addressing whether a defendant has sufficient minimum contact with the forum state, the court is to then consider whether the exercise of jurisdiction "would comport with 'fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of jurisdiction comports with fair play and substantial justice, the court evaluates the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Christian Science Bd. of Dirs. Of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). "More generally, reasonableness analysis is designed to ensure

that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id*.

Importantly, the plaintiff cannot be the only link between the defendant and the forum state, rather, "it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him". See *Burger King, supra,* at 478, 105 S.Ct. 2174 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot" *Kulko v. Superior Court of Cal., City and County of San Francisco,* 436 U.S. 84, 93, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (declining to "find personal jurisdiction in a State ... merely because [the plaintiff in a child support action] was residing there"). A defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff or other parties, but a defendant's relationship with a plaintiff or third party, standing alone, is an

insufficient basis for jurisdiction. See *Rush, supra,* at 332, 100 S.Ct. 571 ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. Due process requires that a defendant be hailed into court in a forum state based on his own affiliation with the state, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the state. *Burger King,* 471 U.S., at 475, 105 S.Ct. 2174.

This Court's exercise of jurisdiction over Cueto and Bella Mar would certainly not comport with fair play and substantial justice -- especially in light of the fact that neither Bella Mar nor Cueto have any contacts with Maryland. Plaintiff has not alleged or articulated any conduct by Cueto or Bella Mar to form necessary connection with Maryland that would provide a basis for this Court's jurisdiction over Cueto and/or Bella Mar.

Therefore, based upon the foregoing, it is evident that Plaintiff failed to establish this Court's personal jurisdiction over Cueto and Bella Mar. It is Plaintiff's burden to "[establish] a prima facie case of personal

jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Even if such a prima facie case is made, "[w]here, Defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1268-69 (11th Cir. 2002).

Here, in light of Defendants' affidavits contesting jurisdiction, Plaintiff has not alleged sufficient material facts to support personal jurisdiction over Cueto and Bella Mar under either the long-arm statute or the Due Process Clause.  (See **Exhibit F**, the affidavit in Support of Motion to Dismiss) Indeed, Plaintiff has made no specific factual allegations regarding personal jurisdiction and Plaintiff's Complaint fails to invoke any provision of Maryland's long-arm statute applicable to Diaz Cueto and Bella Mar.

Moreover, Diaz Cueto and Bella Mar submit that the requirements of Maryland's long-arm statute cannot be satisfied here as neither Diaz Cueto nor Bella Mar has undertaken any of the activities enumerated in

the long-arm statute. Plaintiff has also failed to meet the requirements of the Due Process Clause as Plaintiff has not alleged sufficient material facts to establish specific or general jurisdiction over Diaz Cueto or Bella Mar. Moreover, exercising jurisdiction over Defendants who have no contacts with this State would not comport to fair play and substantial justice.

### B. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FORUM NON CONVENIENS

The Complaint filed in this case should be dismissed for forum non conveniens as Plaintiff's choice of forum is not entitled to substantial deference, the Commonwealth of the Bahamas has adequate and available relief, and the private and public interest overwhelmingly favor the Bahamas as the forum for this matter.

A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum. *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d

242, 246 (4th Cir. 2011). A federal court has discretion to dismiss on *forum non conveniens* grounds "when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423, 127 S. Ct. 1184, 1186, 167 L. Ed. 2d 15 (2007).  Further, the doctrine of forum non conveniens is particularly designed to prevent harassment of defendants. *Brown v. Stallworth*, 235 F. Supp. 2d 453 (D. Md. 2002).  The Agreement between the parties has a forum/venue and choice of law provision that is mandatory and enforceable and is more fully briefed below.

### A. Plaintiff's Choice of Forum is Not Entitled to Substantial Deference

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum, however, when the

plaintiff's choice is not its home forum the presumption in the plaintiff's favor "applies with less force," for the assumption that the chosen forum is appropriate is in such cases "less reasonable." See *Sinochem Int'l Co.* 549 U.S. at 430. Thus, when, as here, a plaintiff chooses to bring a lawsuit away from the home state, Plaintiff's choice of forum is not entitled to any substantial deference. *See Piper*, 454 U.S. at 255-56 (foreign plaintiff's choice of a United States court given "less deference"). Moreover, Plaintiff, a California limited liability company, has absolutely no connection to the District of Maryland and the transactions and conduct at issue have no relations to this forum. Accordingly, Plaintiff's choice of Maryland as the forum is not entitled to any deference.

## B. The Commonwealth Of The Bahamas Has Adequate and Available Relief

A foreign forum is "adequate," for purposes of forum non conveniens analysis, when: (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated

unfairly, even though they may not enjoy the same benefits as they might receive in an *American court. ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616 (E.D. Va. 2013).   US District Courts have consistently held that Bahamas is an adequate alternate forum.

Availability will ordinarily "be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft,* 454 U.S. at 255 n. 22, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839). "To establish inadequacy, plaintiffs have to show that remedies available in foreign courts are either nonexistent or "clearly unsatisfactory." *Piper*, 454 U.S. at 255 n.22. Merely showing that the law or remedy is less favorable or that the case might proceed more slowly is insufficient. *Id*. at 252. Thus, "if a remedy is available, the forum is adequate". See *Piper*,54 U.S. at 254 (forum adequate unless available remedy is so deficient as to be "no remedy at all.")

The Commonwealth of the Bahamas easily meets the threshold requirement of providing an adequate and available

remedy.  The purchase and sale agreement at issue was entered into in accordance with the laws of the Commonwealth of The Bahamas that provide legal remedies related to conveying real property located in the Commonwealth of The Bahamas. Further, all parties to this litigation can come within the jurisdiction of the Commonwealth of the Bahamas, and the parties would not be deprived of any remedies provided by the laws of the Bahamas or treated unfairly.  Moreover,  defendants are amenable to process in the Commonwealth of the Bahamas. Accordingly, the Commonwealth of the Bahamas have adequate and available remedies.    The District Court of Maryland has held that interpreting Bahamian law is an imposition on the court and that the Bahamas are an adequate alternative forum: For the Maryland Courts to apply Bahamian law would hardly further the efficient resolution of controversies such as the instant one.  Additionally, the **Bahamas is an adequate forum**. Maryland's relatively small to non-existent interest in this litigation as compared to that of the Bahamas indicates that the

Bahamas would be a better forum to achieve the most efficient resolution of the controversy. See Miyoung Son v. Kerzner Int'l Resorts, Inc., Civil Action No. AW-06-2160, 2007 WL 9782620, 2007 U.S. Dist. LEXIS 107361 (D. Md. Apr. 27, 2007)

## C.  <u>The Private Interest Overwhelmingly Favor The Commonwealth Of The Bahamas As A Forum</u>

The private factors that the Court must consider for determining whether to dismiss a case for *forum non conveniens* include: (1) "the relative ease of access to sources of proof;" (2) "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" (3) "possibility of view of premises, if view would be appropriate to the action;" and (4) any "other practical problems" that must be addressed in order to "make trial of a case easy, expeditious and inexpensive." *Piper Aircraft,* 454 U.S. at 241

n. 6, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839);

*ElcomSoft, Ltd. v. Passcovery Co.,* 958 F. Supp. 2d 616, 622 (E.D. Va.

2013).

> D. In considering these factors, the Court should compare
> the relative ease or hardship for each party to litigate in each
> forum. Litigation in Maryland would be a hardship for all
> parties, while the presence of the relevant evidence in the
> Commonwealth of the Bahamas would make litigation there less
> burdensome on all. Plaintiff is a California limited liability
> company without any known connection to this forum.  Further,
> Defendant Bella Mar is a Bahamian corporation and Defendant,
> Diaz-Cueto is a resident of the State of Florida.   Neither
> Defendant has any connection to the District of Maryland.
> Importantly, the non-party witnesses expected to testify in this
> matter reside in the Bahamas and the lack of compulsory
> process over witnesses and the cost of bringing the witnesses to
> Maryland to testify would be prohibitive. See, *Allstate Life Ins.
> Co. v. Linter Group Ltd*., 994 F.2d 996, 1001 (2d Cir. 1993)

("The cost of bringing witnesses [from Australia] to the United States for trial, assuming they are willing would be prohibitive."). Indeed, consideration of the private factors favor litigation in the Commonwealth of the Bahamas over the District of Maryland.

### E.  The Public Interest Overwhelmingly Favor The Commonwealth Of The Bahamas As A Forum

The public factors that the Court must consider are: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized controversies decided at home;" (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;" (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839)

Consideration of the public factors also favor litigation in the

Commonwealth of the Bahamas. It is well-settled that the most important public interests are the foreign state's interest in the resolution of the controversy, the administrative burdens posed by trial, and the need to apply foreign law. See *Grodinsky v. Fairchild Indus., Inc*., 507 F. Supp. 1245, 1251-52 (D. Md. 1981). As the Piper Court recognized, "there is 'a local interest in having localized controversies decided at home.'" 454 U.S. at 260 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

Here, Bahamas has a profound interest in adjudicating the validity of the purchase and sale agreement for real property located in the Bahamas. Additionally, time spent attempting to obtain testimony of unwilling foreign witnesses "would create inefficiency and extra cost and tend to protract the litigation, and impose a further administrative burden on this forum." See *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co*., 515 F. Supp. 2d 1258, 1276 (M.D. Fla. 2007). Further, the purchase and sale contract at issue contains a choice of law clause declaring that the laws of the Commonwealth of The Bahamas as the governing law of the

Agreement. Thus, avoiding unnecessary problems in conflicts of law or application of Bahamian law issues also point toward dismissal. *Piper,* 454 U.S. at 259-60; see also *Ullah v. Canion Shipping Co., Ltd.*, 589 F. Supp. 552, 559 (D. Md. 1984) (refusing to exercise jurisdiction when Greek law applied); *Grodinsky*, 507 F. Supp. 552, 559 at 1252 (dismissing case on forum non conveniens grounds because "Canadian law will likely apply").

Moreover, there is no basis, and certainly no justification to force Maryland citizens to hear and decide this case where there is absolutely no relation to Maryland.  This case relates to an agreement between a Wyoming LLC and a Bahamian corporation for the purchase of real property located in the Commonwealth of the Bahamas. Therefore, "[B]ecause the local interest in this lawsuit is comparatively low, the citizens of [the state] should not be forced to bear the burden of this dispute." *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1147 (9th Cir. 2000).

## C. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(3) FOR IMPROPER VENUE

This Court should dismiss Plaintiff's Complaint on the basis that venue is improper under Rule 12(b)(3) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). Like jurisdiction, Plaintiff bears the burden of establishing that his claims are brought in the proper judicial district. See *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1028 (S.D. Fla. 1991). Plaintiff's attempt at meeting this burden fails. The agreement that is the subject of this litigation was not executed in this State, the defendants are non-residents of this State and the property that is the subject of this action is located in the Bahamas.  Moreover, Paragraph 12 of the Agreement provided that the laws of the Commonwealth of The Bahamas was the governing law and the Bahamas was the exclusive venue for any litigation arising from the Agreement: The agreement states: "This agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the law of the commonwealth of the Bahamas and

venue shall be in the commonwealth of the Bahamas. The Bahamas is a stable parliamentary democratic country with a highly functional court system and independent judiciary. The court of last report in the Bahamas is the Privy Council in England. The Bahamas provides an adequate forum for any dispute between the parties." See Agreement attached as Plaintiff's Exhibit 1.   Therefore, the Complaint should be dismissed for improper of venue under Rule 12(b)(3).   The agreement states :

### D. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANT.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when the plaintiff can prove no set of facts that would entitle it to relief. See *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). Here, Plaintiff's Amended Complaint fails to state a claim against Defendants for any of the relief requested and should be dismissed.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test

the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro,* 178 F. 3d 231, 243–44 (4th Cir.1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd P'ship,* 213 F.3d 175, 180 (4th Cir.2000); *Fernandez Cmty. Ctr., LLC v. Toshiba Bus. Sols. (USA), Inc.,* No. 5:14-CV-692-F, 2015 WL 5054463, at *2 (E.D.N.C. Aug. 26, 2015).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 129

S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *Mosley v. OneWest Bank*, No. CIV.A. RDB-11-00698, 2011 WL 5005193, at *2 (D. Md. Oct. 19, 2011)

### 1. **Plaintiff Failed To State A Cause of Action For Rescission**

As the first claim for relief, Plaintiff alleges that the purchase and sale agreement between Bella Mar and Newport should be rescinded as the contract was illegal, unconscionable and because there was a mutual mistake.  First and foremost, the Agreement is subject to the laws of the Commonwealth of The Bahamas.  Under the laws of The Bahamas, the Plaintiff is simply not entitled to rescission. In fact under Bahamian law given fact in this case where Newport failed to make timely payment and defaulted and where the receiver took sat on matter for over  a year it would be Bella Mar that could have sued for rescission not the other way around. (See Commonwealth of Bahamas Supreme Court case Zeleg (Bahamas) v. Ocl Investment Ltd, CLE/gen/ FP No. 54 od 209)

(Also see, Thomas Katheder, Purchasing Real Estate in the Bahamas, 29 U. Miami Inter-Am. L. Rev 197 (1998).

Moreover, even under Maryland law the equitable doctrine of rescission is certainly not applicable here as the contract between Bella Mar and Newport was a valid, bona fide, legal, and an arms-length transaction where both parties were represented by legal counsel.

Rescission of a contract may be had where the breach of contract "substantially defeats its purpose," or where the breach is material and willful, or where the breach is so substantial and fundamental "as to strongly tend to defeat the object of the parties in making the contract. *Mansfield v. Orr*, 545 F. Supp. 118, 121 (D. Md. 1982): see also *Matzelle v. Pratt*, 332 F. Supp. 1010, 1012 (E.D. Va 1971) (a general principle of contract law is that rescission should be permitted only when the complaining party has suffered a breach so material and substantial in nature that it affects the very essence of the contract and serves to defeat the object of the parties). Further, "contracts ... may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation in their making. *Lawley v. Northam*, No.

CIV.A. ELH-10-1074, 2011 WL 6013279, at *25 (D. Md. Dec. 1, 2011).

A rescission implies the entire abrogation and undoing of the contract from the beginning and seeks to create a situation the same as if no contract ever had existed. *See Fernandez Cmty. Ctr., LLC v. Toshiba Bus. Sols. (USA), Inc*., No. 5:14-CV-692-F, 2015 WL 5054463, at 2 (E.D.N.C. Aug. 26, 2015). To state a claim for rescission, a party must also state "a plausible underlying claim for such relief." *Superior Performers,Inc. v. Ewing,* No. 1:14CV232, 2015  WL 3823907, at *4 (M.D.N.C. June 19, 2015). However, courts will not grant rescission based only on a simple breach of contract. *Id*. Rescission is a remedy based upon a substantial breach or some underlying deficiency in creating the contract, such as "fraud, imposition, undue influence, or like oppressive circumstances." *See Tarlton v. Keith,* 250 N.C. 298, 305, 108 S.E.2d 621, 625 (1959). Absent one of those additional factors, courts are unlikely to grant rescission for mere breach of contract. *Id*.

Here, Bell Mar and Newport entered into a valid and enforceable contract for the purchase and sale of real property located on Long Island, Bahamas.  In fact, the fair market value of the property exceeded

the purchase price of the property. (**See exhibit E** the independent appraisal report)  Thus, Newport received a substantial benefit from the Agreement. At all times during the negotiation and subsequently thereafter Newport was represented by legal counsel.  Newport began is obligations pursuant to the contract by paying the required down payment and making the required monthly payments.   Newport subsequently breached the contract by failing to make the monthly payments despite notice of default and demand for payment. Additionally, Plaintiff incorrectly alleges that the funds used to pay Bella Mar came from the "Sanctuary Belize" project. In fact, the funds paid to Bella Mar were provided by Mathew Boymer, an independent investor who has no relation or connection to the "Sanctuary Belize" project. Plaintiff has failed to allege any facts to support a finding of fraud, duress, undue influence, or negligent misrepresentation.   Accordingly, Plaintiff has failed to state a cause of action for rescission.

2. **Plaintiff Failed To State A Cause of Action For Breach of Contract**

To prevail on a breach of contract claim under Maryland law, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc.*, 988 F. Supp. 2d 542, 550 (D. Md. 2013) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)).

Bella Mar's obligation pursuant to the terms of the contract was to provide legal title to the property to Newport on payment of the purchase price. Newport breached the contract by failing to pay the agreed upon purchase price. Therefore, Bella Mar was under no obligation to transfer title to the property to Newport. In fact, Bella Mar was always willing and able to transfer good title to Newport upon payment of the purchase price. Accordingly, Plaintiff has failed to state a cause of action for breach.

3. **Plaintiff Failed to State A Cause of Action For Fraudulent Transfer**

As a threshold matter Defendants submit that the claims brought pursuant to the California Civil Code are improper as California is not the forum state. And the law of the Commonwealth of The Bahamas is applicable. However, even under California law Plaintiff failed to state a cause of action for fraudulent transfer.

The Uniform Fraudulent Transfer Act is codified in California Civil Code section 3439 et seq. Section 3439.04 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Page **43** of **82**

See also *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648, 15 Cal.Rptr.3d 805, 93 P.3d 395 (a fraudulent conveyance under the UFTA involves a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim).  However, Section 3439.08, provides that, "[a] transfer or an obligation is not voidable against a person who took in good faith and for a reasonably equivalent value" Thus, a showing of good faith and reasonably equivalent value is all that is required to defeat a creditor's action based on section 3439.04, and if a transfer is made both in good faith and for a reasonably equivalent value, then the transfer is not a fraudulent transfer under section 3439.04.  See *Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1294, 123 Cal. Rptr. 2d 924, 929 (2002); *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 829, 28 Cal. Rptr. 3d 884, 886–87 (2005) (a transfer is not voidable against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee).

In this case, Bella Mar and Newport entered into an arms-length bona fide transaction for the purchase of real property located on Long Island in the Bahamas.  As previously stated, the market value of the property exceeded the purchase price therefore, but for the breach by Newport, Newport would have obtained a substantial benefit from the purchase of the property.  Further, Section 3439.04 was enacted to protect "creditors" from fraudulent transfers.   Plaintiff is certainly not a creditor and cannot benefit from the protections offered by Section 3439.04.

Additionally, Plaintiff incorrectly allege that the funds used to pay Bella Mar came from the "Sanctuary Belize" project. As previously stated, the funds paid to Bella Mar were provided by Mathew Boymer, an independent investor who has no relation or connection to the "Sanctuary Belize" project.  Clearly, the facts alleged in the Complaint failed to satisfy the requirement of section 3439.04.   Moreover, Bella Mar obtained the payments from Newport in good faith and for a reasonably equivalent value and without any intent to hinder, delay or defraud any creditor.

Accordingly, Plaintiff has failed to state a cause of action for fraudulent transfer.

### 4. <u>Plaintiff Failed To State A Cause of Action For Unjust Enrichment</u>

In Maryland, an unjust enrichment claim has three elements: (1) "[a] benefit conferred upon the defendant by the plaintiff"; (2) "[a]n appreciation or knowledge by the defendant of the benefit"; and (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

Here, the fair market value of the property exceeded the purchase, thus Newport obtained a substantial benefit from the transaction. Further, given that the parties had entered into a purchase and sale agreement, Bella Mar took the property off the market and ceased marketing it for sale. It is the law of the Bahamas that in real estate transactions the

deposit and payments made by a buyer are forfeited to the seller if the buyer breaches the contract.  The situation here is no different. Thus, the retention of the funds by Bellar Mar was justified as it was consideration for the fact that Bella Mar took the Property off the market and stopped marketing the Property for sale.   The funds retained by Bella Mar was just compensation for the loss suffered by Bella Mar as a result of Newport's breach.   Accordingly, Plaintiff has failed to state a cause of action for unjust enrichment.

**5.  <u>Plaintiff Failed To State A Cause of Action For Piercing The Corporate Veil</u>**

As a general rule, "a corporation is an entity, separate and distinct from its officers and stockholders, and ... its debts are not the individual indebtedness of its stockholders." *DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). However, under the equitable doctrine of piercing the corporate veil, in extraordinary circumstances, courts will disregard the corporate form, "exposing those

behind the corporation to liability." *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 64 (4th Cir. 1989). "The standard for piercing the corporate veil is high, but its purpose is to 'achieve an equitable result' by 'focus[ing] on reality and not form, on how the corporation operated and the [defendants'] relationship to that operation." ' *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015) (first alteration in original) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013)).  [I]n extraordinary cases, such as the corporate form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity." *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 544 (4th Cir. 2013) quoting *Corrigan v. U.S. Steel Corp.,* 478 F.3d 718, 724 (6th Cir.2007). [A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as "piercing the corporate veil." *Dry Handy Invs., Ltd. v. Corvina Shipping Co. S.A.,* 988 F. Supp. 2d 579, 582 (E.D. Va. 2013).  However, "decisions to pierce a corporate veil, exposing those behind the corpora-

tion to liability, must be taken reluctantly and cautiously." *Id*. "In Maryland, courts will disregard the corporate form only where it is necessary to prevent fraud or enforce a paramount equity." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 547 (D. Md. 2011). Thus, under Maryland law, a court may pierce the corporate veil only to prevent fraud or enforce a paramount equity. *See Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.,* 275 Md. 295, 310, 340 A.2d 225, 234 (1975); *Dixon v. The Process Corp.,* 38 Md. App. 644, 656, 382 A.2d 893, 900 (1978) ("We make it clear that the rule of law in this State is that no matter how flimsily woven is the corporate curtain, it may not be flung aside except to prevent fraud or endorse [enforce] a paramount equity."). The alter ego doctrine, then, is not a separate basis for piercing the veil, but is rather subsumed "in the notion of paramount equity." *Hildreth v. Tidewater Equipment Co., Inc.,* 378 Md. 724, 739, 838 A.2d 1204, 1212–13 (2003). Therefore, in order to pierce the corporate veil, plaintiff's well-pleaded allegations and evidence must be tantamount to fraud or invoke a paramount equity. *Baltimore Line Handling Co. v. Brophy*, 771 F.

Supp. 2d 531, 552–53 (D. Md. 2011).  Further, Maryland courts require parties seeking to pierce the corporate veil by alleging fraud to meet a higher standard and make a more vigorous factual showing than do other jurisdictions. Plaintiffs alleging fraud cannot rely on a preponderance of the evidence but must rather "present[ ] clear and convincing evidence. *Residential Warranty Corp.,* 126 Md. App. at 308, 728 A.2d at 790 (*citing Dixon,* 38 Md. App. at 656, 382 A.2d at 900 (concluding that "the law of Maryland mandates that proof of fraud in a civil action, either in law or in equity, must be clear and convincing"); *see also Starfish Condominium Ass'n v. Yorkridge Serv. Corp.,* 295 Md. 693, 714, 458 A.2d 805, 805 (1983). To find that the corporate cloak has been used to perpetuate fraud, Maryland courts have looked for "deliberate

The facts alleged in Count Eight failed to meet the heightened pleading standard required to state an alter ego claim to pierce the corporate veil. Plaintiff's claim that Bella Mar had inadequate capital and that the Bella Mar was a shell company with no assets is certainly contra-

dicted by the independent appraisal showing that Bella Mar owned real property that was estimated in excess of six (6) million dollars.  Moreover, Plaintiff has failed to provide any factual support for the allegations that Bella Mar was used to perpetuate fraud.  As stated throughout this motion, Bella Mar and Newport entered into a bona fide, legal and arms-length transaction for the purchase of real property.  But for Newport's breach, Bella Mar was at all times willing and able to convey and transfer good marketable title to Newport upon completion of the payment arrangement.  As such, Plaintiff has failed to justify the use of this extraordinary remedy to find Cueto personally liable. Therefore, Plaintiff has failed to state a cause of action to pierce the corporate veil to hold Cueto personally liable.

## 6. <u>Plaintiff Failed To State A Cause of Action For Turnover of Receivership Property</u>

Plaintiff's claim that the funds retained by Bella Mar constitute receivership property is without any merit.  Contrary to Plaintiff's allegations, the funds received by Bella Mar were specifically provided by an independent investor who provided the funds to purchase of the property

on Long Island.   Further, the purchase and sale agreement between Newport and Bella Mar was valid, legal and enforceable and not subject to reach by Plaintiff.  In fact, but for Newport's breach, Newport stood to gain a substantial benefit from the transaction as the fair market value of the Property exceeded the purchase price of the property.   Accordingly, Plaintiff has failed to establish that the funds received by Bella Mar is receivership property.

## Conclusion

Plaintiffs' action is an improper attempt to pursue, in an American forum, claims that have no legitimate connection to this country. Plaintiff's claims relate to an agreement for the purchase of property located in the Commonwealth of the Bahamas.  This action was brought in total disregard of Maryland's long-arm statute and Due Process protections. For the reasons and legal authorities set forth herein Defendants, Cueto and Bella Mar, respectfully request that this Court dismiss the Complaint, with prejudice.

Respectfully Submitted,

_____

Brian D. Lyman          bdl@hbdlaw.com
Federal Bar No. 27360

Michael G. Von Sas          mgv@hbdlaw.com
Federal Bar No. 22992

HILLMAN, BROWN & DARROW, P.A.
221 Duke of Gloucester Street
Annapolis, Maryland 21401
410-263-3131/ (fax) 410-269-7912
Attorneys for Defendants
Diaz- Cueto and Bella Mar, Ltd

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 28th day of January, 2022 that a copy of the foregoing (Corrected) Defendants' Motion To Dismiss with Embedded Memorandum of Law and all attachments was filed using the electronic case filing system (ECF) maintained by the United States District Court for the District of Maryland, and I separately sent a copy to the following counsel of record via email: Gary Owen Caris at gcaris@btlaw.com, James E. Van Horn at jvanhorn@btlaw.com, and Kevin C. Driscoll, Jr., at kevin.driscoll@btlaw.com.

_____

Brian D. Lyman

DATED: November 18, 2021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was delivered via

email to the following people and entities:

Gary Owen Caris
gcaris@btlaw.com

James E. Van Horn
jvanhorn@btlaw.com

Kevin C. Driscoll, Jr.
kevin.driscoll@btlaw.com

Respectfully submitted,

**Jorge Diaz-Cueto, Esq.**
6747 Crandon Blvd.
Key Biscayne, FL 33149
Tel: 305-890-3600
jorgediazcueto@bellsouth.net

By:/s/ Jorge Diaz-Cueto
Florida Bar No. 0143367