# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

ROBB EVANS AND ASSOCIATES LLC, AS
COURT-APPOINTED RECEIVER IN THE *IN
RE SANCTUARY BELIZE LITIGATION*,

                    Plaintiff,

v.

JORGE DIAZ-CUETO et al,

                    Defendants.

No. 8:21-cv-2049

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH EMBEDDED MEMORANDUM OF LAW [DOC. 30]

## TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ...................................................................1

II.  THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS............3

III.  DISMISSAL BASED ON A THEORY OF *FORUM NON CONVENIENS* IS UNWARRANTED ...........................................................................8

IV.  VENUE IS PROPER IN THIS COURT AND THE FORUM-SELECTION CLAUSE, IF VALID AT ALL, SHOULD BE TREATED AS PERMISSIVE...............13

    A.  This is the Proper Judicial District.......................................... 13

    B.  The Forum Selection Clause is Unenforceable or Should be Disregarded........... 14

        1.  Defendants Argue for Dismissal Based on a Forum-Selection Clause in an Incomplete and Unsigned Document ...................................14

        2.  The Forum Selection Clause is Permissive, Not Mandatory ...................15

        3.  Even if the Forum Selection Clause is Considered Mandatory, this Court Should Follow Bankruptcy and District Court Decisions that Do Not Bind Trustees to Forum Selection and Arbitration Clauses..........16

        4.  Even if Mandatory, the Court Should Decline to Apply the Forum Selection Clause Because the Agreement for Sale is Germane to Only Two of the Claims Asserted in the Complaint................................20

V.  The Complaint States Valid Claims.......................................................21

    A.  California State Law, Not Bahamian Law, Should Apply.................................... 21

    B.  The Extraneous Evidence Attached to the Motion to Dismiss is Improper.......... 24

    C.  Standards on a Motion to Dismiss ....................................... 25

        1.  The First Claim for Rescission is Adequately Pled ...................................26

        2.  The Claim for Breach of Contract is Adequately Pled ...........................27

        3.  The Four Claims for Fraudulent Transfer are Adequately Pled ...............28

        4.  The Claim for Unjust Enrichment/Constructive Trust is Adequately Pled ........................................................30

5.      The Claim for Piercing the Corporate Veil/Alter Ego is Adequately
        Pled .................................................................................................................32

6.      The Claim for Turnover of Receivership Property is Adequately
        Pled .................................................................................................................33

VI.     CONCLUSION.................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aggarao v. MOL Ship Mgmt. Co.*,
    675 F.3d 355 (4th Cir. 2012) ................................................13

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*,
    571 U.S. 49, 34 S.Ct. 568, 187 L.Ed.2d 48 (2013)..................13

*BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration*,
    884 F.3d 463 (4th Cir. 2018) ..........................................15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................3, 21, 25

*Cannon v. Wells Fargo Bank, N.A.*,
    2014 WL 672687 (D.Md. 2014) ........................................24

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers. Inc.*,
    334 F.3d 390 (4th Cir. 2003) ..........................................25

*Carney v. Baracha*,
    996 F.Supp.2d 56 (D.Conn. 2014)................................12, 20

*Daimler AG v. Bauman*,
    571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)............4

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ..........................................29

*Donovan v. RRL Corp.*,
    26 Cal. 4th 261, 27 P.3d 702 (2001) ..................................26

*In re Dozier Financial, Inc.*,
    587 B.R. 637 (Bankr.D.S.C. 2018) ..........................17, 18, 20, 21

*Ferruzzi Italia, S.p.A v. Trade & Transp., Inc.*,
    683 F.Supp. 131 (D.Md. 1988) ........................................11

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ..........................................25

*Galustian v. Peters*,
    591 F.3d 724 (4th Cir. 2010) ....................................9, 10, 11

*In re Gandy*,
    299 F.3d 489 (5th Cir. 2002) ........................................................................19, 20

*General Motors Corp. v. Ignacio Lopez de Arriortua*,
    948 F.Supp. 656 (E.D.Mich. 1996).................................................................8

*Gulf Oil v. Gilbert*,
    330 U.S. 501, 67 S.Ct. 839 (1947)................................................................11

*Haile v. Henderson National Bank*,
    657 F.2d 816 (6th Cir. 1981) .....................................................................6, 19

*Klaxon Company v. Stentor Electric Manufacturing, Co.*,
    313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)....................................22

*Klein v. Abdulbaki*,
    2012 WL 2317357 (D. Ut. 2012)...................................................................6

*Klein v. Cornelius*,
    786 F.3d 1310 (10th Cir. 2015) ....................................................................5

*Kontoulas v. A.H. Robins Co., Inc.*,
    745 F.2d 312 (4th Cir. 1984) .........................................................................8

*In re Merritt Dredging Co.*,
    839 F.2d 203 (4th Cir. 1988) .......................................................................22

*Mylan Labs., Inc. v. Akzo*,
    2 F.3d 56 (4th Cir. 1993) ...........................................................................4, 5

*Overseas Media, Inc. v. Skvortsov*,
    277 Fed.Appx. 92 (2d Cir. 2008)..................................................................8

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*,
    998 F.2d 1192 (3rd Cir. 1993) .....................................................................25

*Philip Morris, Inc. v. Angeletti*,
    752 A.2d 220 (Md. 2000) ...........................................................................23

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)....................................8

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)............................................................................9

*Quilling v. Cristell*,
    2006 WL 316981 (W.D.N.C. 2006) ..........................................................6, 29

*RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*,
    640 F.Supp.2d 660 (D.Md. 2009) .......................................................................24

*Robb Evans & Associates v. Holibaugh*,
    609 F.3d 359 (4th Cir. 2010) ............................................................................9

*S.E.C. v. First Sec. Co. of Chicago*,
    507 F.2d 417 (7th Cir. 1974) ..........................................................................20

*S.E.C. v. Investors Sec. Leasing Corp.*,
    476 F. Supp. 837 (W.D.Pa. 1979) ..................................................................20

*S.E.C. v. Vision Communications, Inc.*,
    74 F.3d 287 (D.C.Cir. 1996) ..............................................................................6

*S.E.C. v. Wealth Mgmt. LLC*,
    628 F.3d 323 (7th Cir. 2010) ..........................................................................17

*In re Sanctuary Belize Litigation*,
    409 F.Supp.3d 380 (D.MD 2019) ..................................................................4, 7

*In re Sanctuary Belize Litigation*,
    Case No. 18-cv-3309-PJM ........................................................................ *passim*

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) .................................................................5, 9, 14, 29

*SEC v. Bilzerian*,
    378 F.3d 1100 (D.C.Cir. 2004) .............................................................5, 6, 9, 13

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ........................................................................5, 6

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) .......................................8

*Three M Enters., Inc. v. Texas D.A.R. Enters., Inc.*,
    368 F.Supp.2d 450 (D.Md. 2005) ..................................................................22

*In re TMST, Inc.*,
    610 B.R. 807 (Bankr.D.Md. 2019) ..................................................................24

*United Mine Workers v. Gibbs*,
    383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ........................................22

*Walker v. Got'cha Towing & Recovery (In re Walker)*,
    551 B.R. 679 (Bankr.M.D.Ga. 2016) ..............................................................18

*In re White Mountain Mining Co.*,
  403 F.3d 164 (4th Cir. 2005) ........................................................................19

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) .......................................................................31

**State Cases**

*Alexander v. Abbey of the Chimes*,
  104 Cal.App.3d 39, 163 Cal.Rptr. 377 .........................................................32

*American Motorists Ins. Co. v. ARTRA Group, Inc.*,
  338 Md. 560, 659 A.2d 1295 (1995) ........................................................22, 23

*Cont'l Cas. Co. v. Kemper Ins. Co.*,
  173 Md.App. 542, 920 A.2d 66 (2007)...........................................................23

*Guthrie v. Times-Mirror Co.*,
  51 Cal.App.3d 879, 124 Cal.Rptr. 577 (1975).................................................26

*Hamilton v. Greenwich Investors XXVI, LLC*,
  195 Cal.App.4th 1602, 126 Cal.Rptr.3d 174 (2011)...........................................27

*Lectrodryer v. SeoulBank*,
  77 Cal.App.4th 723, 91 Cal.Rptr.2d 881 (2000)..............................................31

*National Glass, Inc. v. J.C. Penney Properties, Inc.*,
  336 Md. 606, 650 A.2d 246 (1994) ..............................................................22

*Nautilus, Inc. v. Yang*,
  11 Cal.App.5th 33, 217 Cal.Rptr.3d 458 (2017)...............................................29

*Otworth v. Southern Pac. Transp. Co.*,
  166 Cal.App.3d 452, 212 Cal.Rptr. 743 (1985)................................................31

*Robertson v. Hyde*,
  58 Cal.App.2d 667 137 P.2d 703 (1943) ........................................................26

*Sherrod v. Achir*,
  817 A.2d 951 (Md. Ct. Spec. App. 2003) ......................................................23

*The United States Life Ins. Co. v. Wilson*,
  198 Md.App. 452, 18 A.3d 110 (2011)...........................................................23

*Webber v. Inland Empire Investments, Inc.*,
  74 Cal.App.4th 884, 88 Cal.Rptr.2d 594 (1999)...............................................32

**Statutes**

28 U.S.C. § 754 ................................................................................................5, 6, 9, 14

28 U.S.C. §§ 754 and 1692 ...............................................................................2, 5, 6, 7

28 U.S.C. §1367 ...........................................................................................................9

28 U.S.C. § 1391(b) ...................................................................................................13

28 U.S.C. § 1406(a) ...................................................................................................13

28 U.S.C. §1692 ...........................................................................................................5

Cal. Civ. Code §1689(b)(2)-(4) .................................................................................27

Cal. Civ. Code §1689(b)(5) .......................................................................................26

Cal. Civ. Code § 3439 *et seq* ...................................................................................28

Cal. Civ. Code §3439.01 ...........................................................................................30

Cal. Civ. Code § 3439.08(g) ......................................................................................29

**Other Authorities**

Fed. R. Civ. Proc. 4(k) ................................................................................................6

Fed. R. Civ. Proc.12(b)(2) .......................................................................................3, 4

Fed. R. Civ. Proc. 12(b)(3) ...................................................................................13, 17

Rule 12(b)(6) ..............................................................................................................25

Fed. R. Civ. Proc. 12(d) ............................................................................................24

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH
EMBEDDED MEMORANDUM OF LAW [DOC. 30]**

Receiver and Plaintiff herein, Marc-Philip Ferzan of Ankura Consulting Group, LLC (the

"Receiver"), the successor receiver to Robb Evans & Associates LLC[1] hereby presents this

response in opposition (the "Opposition") to the Defendants' Motion to Dismiss with Embedded

Memorandum of Law (Doc. 30) ("Motion to Dismiss") and respectfully requests this Court deny

the Motion to Dismiss for the reasons set forth herein.

## I.   SUMMARY OF ARGUMENT

As set forth in the Complaint, Newport Land Group LLC ("Newport"), one of the

Receivership Entities in the underlying *In re Sanctuary Belize Litigation*, entered into an

Agreement for Sale[2] and related documents with Defendant Bella Mar Estates, Ltd. ("Bella

Mar") for the purchase of a parcel of land in a remote and largely uninhabited area of The

Bahamas.  Newport paid $1,065,000 to Bella Mar towards this purchase.  Once he learned of the

main Sanctuary Belize litigation, Bella Mar's president, Defendant Jorge Diaz-Cueto ("Diaz-

Cueto"), wrongfully terminated the sale after the inception of the receivership, taking the

untenable position that the entire $1,065,000 payment was forfeited to Bella Mar.  The Receiver

has brought the instant Complaint explaining in detail over 131 paragraphs why the Receiver is

entitled to a return of this money to the receivership estate, including $881,245 that Diaz-Cueto

received personally.

---

[1] Reference is made to the Notice of Substitution of Plaintiff and Successor Receiver by which
Marc-Philip Ferzan of Ankura Consulting Group, LLC was named successor receiver (Doc. 9)
and the Order Appointing Marc-Philip Ferzan as Receiver in the *In re Sanctuary Belize
Litigation*, Case No. 18-cv-3309-PJM (Doc. 1305).
[2] Capitalized terms not defined herein are as defined in the Complaint.

Defendants make four principal arguments in support of their Motion to Dismiss.  First, largely relying on *International Shoe* and its progeny, it is argued that this Court lacks personal jurisdiction over the Defendants, a Florida resident and his Bahamian corporation, due to lack of minimum contacts with Maryland.  However, an *International Shoe* analysis is not proper since 28 U.S.C. §§ 754 and 1692 authorize the Receiver to effectuate nationwide service of process over any person or entity with minimum contacts with the United States as a whole and the exercise of such jurisdiction comports with the principles of due process.  Second, Defendants argue that the Complaint should be dismissed based on a theory of *forum non conveniens* since The Bahamas is the preferred forum.  Whether or not The Bahamas has an adequate court system, the deference afforded to the Receiver's choice of forum, ancillary to the main *In re Sanctuary Belize Litigation*, combined with the balance of public and private interests demonstrate that this Court remains the proper forum, particularly since the Defendants acknowledge that litigation in The Bahamas may deprive the Receiver of essential relief sought in the Complaint.  Third, Defendants argue that a provision in one of the Deal Documents creates an enforceable forum-selection clause.[3]  As discussed below, the language referencing venue should not be followed by this Court because it is attached to a demonstrably incomplete and unsigned Agreement for Sale, is a permissive and not mandatory forum-selection clause and Courts routinely find forum-selection clauses and analogous arbitration provisions unenforceable against Bankruptcy trustees for reasons very similar to those present in this receivership.  Fourth, Defendants argue that each of the nine claims for relief in the Complaint should be dismissed for failure to state a claim.  However, the 131-paragraph, 29-page Complaint, which must be taken

---

[3] While not a basis for outright dismissal of the Complaint, Defendants also argue that Bahamian law controls.  As set forth herein, Receiver disputes that assertion.

as true for purposes of the Motion to Dismiss, provides a substantial and detailed factual foundation for each of the claims for relief.  The Complaint is pled in far more than a conclusory or formulaic fashion. The Motion to Dismiss veers from the allegations in the Complaint by attaching three objectionable affidavits and related exhibits.  However, those affidavits and exhibits should not be considered for the reasons set forth in the Evidentiary Objections filed by the Receiver contemporaneously with this Response.  The guidance provided by *Twombly* and *Iqbal* demonstrates that all claims in the Complaint are properly pled, requiring that the Motion to Dismiss be denied in its entirety.

## II.    THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

Defendants first argue that the Complaint should be dismissed pursuant to Fed. R. Civ. Proc.12(b)(2), asserting that this Court lacks personal jurisdiction over them.  According to the Motion to Dismiss, the (i) Maryland's long-arm statute against Diaz-Cueto, a Florida resident, and Bella Mar, a Bahamian corporation, is not satisfied; (ii) due process is not satisfied; and (iii) exercise of personal jurisdiction over the Defendants would not comport with fair play and substantial justice.  Motion to Dismiss, pages 6-16.  In support of this argument, Diaz-Cueto executed an affidavit[4] attached as Exhibit F to the Motion to Dismiss purporting to show that neither he nor Bella Mar exhibited any of the traditional contacts commonly used in determining if a particular defendant has availed itself to personal jurisdiction by a state's long-arm statute.

---

[4] The Receiver has filed Evidentiary Objections to the three affidavits and other exhibits attached to the Motion to Dismiss.  For the purposes of this Response, the Receiver will assume, *arguendo*, that neither Diaz-Cueto nor Bella Mar have the traditional contacts with the State of Maryland as required under an *International Shoe* analysis.  However, as set forth herein, such an analysis is inapplicable due to the nationwide jurisdiction inherent in receivership matters.

"Ordinarily, in determining whether a federal court may exercise specific personal jurisdiction[5] over a defendant, the court considers '(1) the extent to which the defendant has purposefully availed [himself or] itself of the privilege of conducting activities in the state; (2) whether the [plaintiff's] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *In re Sanctuary Belize Litigation*, 409 F.Supp.3d 380, 394 (D.MD 2019) *citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers. Inc.,* 334 F.3d 390, 397 (4th Cir. 2003).

"However, if a statute authorizes nationwide service of process, so long as the assertion of jurisdiction over a defendant is compatible with due process, service of process [is] sufficient to establish personal jurisdiction over the defendant*." Id., citing ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). "Accordingly, a statute providing for nationwide service expands a district court's jurisdiction to the entire country, altering the traditional minimum contacts test that focuses on a defendant's contacts with a particular state and becomes 'a national contacts test.'" *Id., citing United States v. Batato*, 833 F.3d 413, 423 n.3 (4th Cir. 2016) (citation and internal quotation marks omitted).

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993) (*citing Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) and *Dowless v. Warren-Rupp Houdailles, Inc.,* 800

---

[5] Personal jurisdiction over a defendant may be general or specific. Here, specific jurisdiction is present and may be exercised over a defendant where "the suit arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).  As set forth below, when nationwide service of process is permissible, the term "forum" means the entire United States.

F.2d 1305, 1307 (4th Cir. 1986)). When, however, "the district court decides a pretrial personal jurisdiction dismissal motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Mylan*, 2 F.3d at 60 (*citing Combs*, 886 F.2d at 676). The Court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff. *Id*.

Here, as noted by the Complaint, the Receiver asserted 28 U.S.C. §§ 754 and 1692 as one of the bases for personal jurisdiction over the Defendants.  Complaint, ¶17.  These statutes give the Receiver power to effectuate nationwide service of process.  Title 28 U.S.C. § 754 provides that "[a] receiver appointed in any civil action or proceeding involving property … situated in different districts" is entitled to "complete jurisdiction and control" of that property.  In addition, 28 U.S.C. §1692 provides that where a receiver is appointed for property located in different districts, "process may issue and be executed in any such district as if the property lay wholly within one district." "In short, §754 authorizes receivers properly appointed in one federal district to sue for, and take possession of, property in other districts, and §1692 extends the appointing court's territorial reach to all districts in which receivership property is located. **Read together, they allow nationwide service of process for receivers pursuing receivership property**." *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015) (emphasis added and internal citations omitted).

The Receiver is not required to bring suit in the jurisdiction where the claim or property resides.  Title 28 U.S.C. § 754 "allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country." *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995); *see also SEC v. Ross,* 504 F.3d 1130, 1145–46 (9th Cir. 2007); *SEC v. Bilzerian,* 378 F.3d

1100, 1105–06 (D.C.Cir. 2004); *Haile v. Henderson National Bank,* 657 F.2d 816, 823–24 (6th Cir. 1981).

Defendants, in their brief discussion of 28 U.S.C. §§ 754 and 1692, argue that these provisions are limited to the establishment of *in rem* jurisdiction and do not give rise to *in personam* jurisdiction.  That is incorrect.  The overwhelming majority of cases addressing this issue hold that both *in rem* and *in personam* jurisdiction are created by the intersection of 28 U.S.C. §§ 754 and 1692. "As with the nationwide service provision in the Securities Act, where a party has been properly served by the Receiver, the Due Process Clause is satisfied because the party has minimum contacts with the United States as a whole. *See Omni Capital Int'l*, 484 U.S. at 104–06, 108 S.Ct. 404; *see also Haile*, 657 F.2d at 824 (noting that "[i]n an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe* do not apply")"; *SEC v. Ross,* 504 F.3d 1130, 1146 (9th Cir. 2007); *S.E.C. v. Vision Communications, Inc.,* 74 F.3d 287, 290–91 (D.C.Cir. 1996) (noting that §754 is a stepping stone on the receivership court's way to exercising *in personam* jurisdiction over one who holds receivership assets in a remote district); *S.E.C. v Bilzerian*, 378 F.3d. 1100 (D.C.Cir. 2004) (same); *Klein v. Abdulbaki,* 2012 WL 2317357, *3 (D. Ut. 2012) (holding the "court concludes that the federal receiver statutes provide for nationwide service of process for *in personam* as well as *in rem* jurisdiction"); *Quilling v. Cristell*, 2006 WL 316981, *2 (W.D.N.C. 2006) (noting that Sections 754 and 1692 gave a North Carolina District Court *in personam* jurisdiction over defendants, who were Florida residents).

Further, this concept of personal jurisdiction is buttressed by Fed. R. Civ. Proc. 4(k) which provides that service of the summons or the filing of a waiver of service "establishes personal jurisdiction….when authorized by a federal statute." On September 29, 2021, both

defendants executed and consented to the filing of a Waiver of Service of Summons. (Doc. 8). In conjunction with Title 28 U.S.C. §§ 754 and 1692, this waiver properly established personal jurisdiction over each defendant.

Defendants assert that the intersection of Sections 754 and 1692 fail to give rise to *in rem* jurisdiction over the Long Island Parcel, the real estate in The Bahamas subject to the Agreement for Sale. However, that misstates the relief sought in the Complaint. The Complaint does not seek any claim to specific performance or similar relief related to the Long Island Parcel. The claims asserted are all *in personam* money damage claims against Defendants, based on rescission, breach of contract, fraudulent transfer, unjust enrichment, piercing the corporate veil and turnover of monies that constitute receivership property.

Due process has been met. This Court has noted that in a nationwide service of process situation, the due process and minimum contacts inquiry focuses on the defendant's contacts with the United States as a whole, rather than the defendant's contacts with Maryland. *In re Sanctuary Belize Litigation*, 409 F.Supp.3d 380, 394-95 (D.MD 2019). Here, such contacts are easily met. Diaz-Cueto is a United States citizen and a Florida resident. Bella Mar, though a Bahamian corporation, has regular and systematic contacts with the United States. Its president, Diaz-Cueto, is a United States citizen and Florida resident. Bella Mar voluntarily entered into a contract with Newport, a United States corporation doing business in Irvine, California, along with all of the other Receivership Entities. Complaint, ¶¶ 12-13, 43. Further, the Receiver has alleged that Diaz-Cueto owns, dominates and controls Bella Mar to such extent that he is in fact the alter ego of Bella Mar. Complaint ¶¶ 12-13, 24-26. Additionally, Diaz-Cueto dealt with the Sanctuary Belize ringleader Andris Pukke regarding a prior possible land deal where Pukke

disclosed to Diaz-Cueto his past legal problems.  Complaint ¶ 40.  To assert jurisdiction over these Defendants under these circumstances does not offend due process.

III.    **DISMISSAL BASED ON A THEORY OF *FORUM NON CONVENIENS* IS UNWARRANTED**

Defendants next argue that this matter should be dismissed based on *forum non conveniens*, arguing that The Bahamas is the proper place for litigating the Complaint.   The defendant seeking dismissal bears the burden of demonstrating more than simply that the forum is inconvenient. *Kontoulas v. A.H. Robins Co., Inc.,* 745 F.2d 312, 316 (4th Cir. 1984).  A district court may dismiss an action under the doctrine of *forum non conveniens* only when a three step inquiry shows that a foreign forum would be more convenient, fair, or sparing of judicial resources. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,* 549 U.S. 422, 432, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). First, the court must determine the degree of deference properly accorded the plaintiff's choice of forum. *Overseas Media, Inc. v. Skvortsov,* 277 Fed.Appx. 92, 96 (2d Cir. 2008).  Second, the court must determine if there is an adequate alternative forum. *Id.* Third, if an adequate alternative forum exists, then the court must weigh the relative convenience of each forum by evaluating certain private and public interest factors. *Id.*  The *forum non conveniens* determination is committed to the sound discretion of the trial court. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

The first factor, the degree of deference afforded to the Receiver's choice of forum, heavily favors the Receiver.  A United States citizen, particularly an equity receiver appointed to protect the interests of defrauded consumers, "should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to defendant, out of all proportion to the convenience to plaintiff." *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp.

656, 668 (E.D.Mich. 1996)(internal citation omitted). The Defendants argue that the Receiver's venue choice is not his home forum.   But this Court is not a random choice by the Receiver. The Receiver was appointed by and remains an officer of this Court.  This Court has ancillary jurisdiction over this action under 28 U.S.C. §1367, and the Receiver seeks to recover assets of the receivership estate.  *See Robb Evans & Associates v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (stating "[A] district court has ancillary subject matter jurisdiction over an action brought by a receiver in furtherance of its appointment where the district court had federal question jurisdiction over the original action in which it appointed the receiver."); *Scholes v. Lehmann*, 56 F.3d at 753 (7th Cir. 1995) (stating "The laying of venue ... is authorized by 28 U.S.C. § 754, which allows a receiver **to sue in the district in which he was appointed** to enforce claims anywhere in the country.") (emphasis added); *Bilzerian*, 378 F.3d at 1107 (noting "[T]he district court correctly concluded that, because the receiver's complaint ... was ... ancillary to the court's exclusive jurisdiction over the receivership estate, venue was properly established."). Thus, the Receiver's choice of venue places this ancillary proceeding in the receivership Court and should be afforded strong deference by this Court and weigh against a finding of *forum non conveniens.*

The second factor to consider is if there is an adequate alternative forum.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir. 2003).  The Fourth Circuit has noted that a defendant moving to dismiss on *forum non conveniens* must submit information "sufficiently clear to carry the defendant's burden to show that the alternative forum offers a remedy for the plaintiff's claim[s]." *Galustian v. Peters*, 591 F.3d 724, 731-32 (4th Cir. 2010).

In *Galustian*, the Fourth Circuit remanded a trial court's dismissal of a case for *forum non conveniens* because the defendant failed to provide adequate evidence that the cause of action, defamation, was properly recognized by the foreign court or that the plaintiff would be able to bring a suit in that court.  In the present case, Defendants assert that: "The law of the Bahamas is that in real estate transactions, the deposit and payments made by a buyer are forfeited to the seller if the buyer breaches the contract."  (Motion to Dismiss, p. 29).  The Motion to Dismiss further states, at page 24, that the Receiver may not sue for rescission in The Bahamas under these facts. Neither of these arguments are developed in detail.  For the purposes of the Motion to Dismiss, the Receiver presumes, *arguendo*, the accuracy of these assertions that seemingly contend that The Bahamas will not recognize the claims which the Receiver may bring.  Thus, the Receiver being deprived of these claims, this Court should follow *Galustian* and retain venue.

While Defendants make conclusory, unsupported statements that The Bahamas' court system can provide "legal remedies related to conveying real property…." and that The Bahamas has a "highly functional court system and independent judiciary"  (Motion to Dismiss, p. 17; Diaz-Cueto Affidavit, ¶14), the Motion to Dismiss fails to address whether Bahamian courts recognize **any** of the claims brought in this action.  To the contrary, as demonstrated in the statements at pages 24 and 29 of the Motion to Dismiss, Defendants assert that the Receiver would be without a remedy were this matter to be heard there.  Additionally, the Motion to Dismiss does not state that the Receiver would even be able to bring those claims in The Bahamas as a foreign litigant.   Further, the Complaint does not seek specific performance or related relief against the Bahamian real estate, only money claims.  Under the guidance of

*Galustian*, this Court should find that Defendants have failed to show an adequate alternative forum.

Only if an adequate alternative forum exists does the Court need to weigh the relative convenience of each forum by evaluating certain private and public interest factors and determining if they weigh in favor of dismissal.  As noted above, the showing of an adequate forum has not been made and even if it had been made, the private and public factors do no support dismissal.

The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) other practical problems involving efficiency and expense of trial. *See Gulf Oil v. Gilbert,* 330 U.S. 501 at 508–09, 67 S.Ct. 839 (1947). A primary concern when evaluating the private factors is to ensure that the plaintiffs did not select an inconvenient forum for the purpose of harassing the defendants. *See, e.g., Ferruzzi Italia, S.p.A v. Trade & Transp., Inc.,* 683 F.Supp. 131, 135 (D.Md. 1988).

As a threshold matter, the Receiver did not select this forum to harass the defendants. Rather, it was chosen because the receivership Court is the proper Court for claims to be brought by the Receiver, as demonstrated above, and because this Court has ancillary jurisdiction to hear the Complaint.  Furthermore, none of the private factors weigh towards having the matter heard in The Bahamas.  The known witnesses on the defense side, as disclosed in the Motion to Dismiss, are Diaz-Cueto, Frank Connelly, Mathew Bowyer and Elliott Lockhart.  Diaz-Cueto and Connelly, as set forth in the Complaint and acknowledged by Diaz-Cueto, are the principal negotiators of the purported agreement.  Diaz-Cueto, Connelly and Bowyer are all United States citizens and reside in the United States.  Only Lockhart is a resident of The Bahamas.  But his

purported affidavit is ethically dubious and his involvement raises more questions than it answers, because Lockhart was Newport's lawyer, whose rights the Receiver seeks to vindicate. In fact, Lockhart's affidavit was originally submitted to unsuccessfully thwart the Receiver from obtaining discovery from Diaz-Cueto and Bella Mar.  From an expense standpoint, litigating in The Bahamas would certainly increase expenses to the Receiver and the receivership estate and would likely increase costs to the Defendants too, since Diaz-Cueto resides in the United States.

The public interest factors fare no better for Defendants.  It is unclear what interest, if any, The Bahamas has in this matter since the ownership of the Long Island Parcel is not at issue in the Complaint.  The Deal Documents were negotiated in the United States by United States citizens.

There are legitimate and substantial reasons for the Receiver to bring litigation in this Court. This case is an ancillary proceeding related to an action brought in this District by the Federal Trade Commission to recover money lost by defrauded lot purchasers, with damages the Court has quantified at $120.2 million.  Requiring the Receiver to commence a proceeding in a foreign jurisdiction while the primary action was before this Court would unnecessarily complicate matters, increase costs for the Receiver and the receivership estate, and based on the Defendants' assertions, will result in the Receiver being prevented from litigating the claims he has brought.

Even if The Bahamas is an adequate forum in which to litigate this dispute, Defendants have not overcome their burden to show that the balance of interests weighs in favor of litigation in The Bahamas or that the Receiver's choice of forum should not be given substantial deference. *See Carney v. Baracha*, 996 F.Supp.2d 56 (D.Conn. 2014) (in receivership matter, denying

*forum non conveniens* claim to move matter to Venezuela).  Therefore, the Court should deny

defendant's motion to dismiss based on *forum non conveniens*.

## IV.    VENUE IS PROPER IN THIS COURT AND THE FORUM-SELECTION CLAUSE, IF VALID AT ALL, SHOULD BE TREATED AS PERMISSIVE

Defendants next seek dismissal pursuant to improper venue pursuant to Fed. R. Civ. Proc.

12(b)(3) and 28 U.S.C. § 1406(a).  The Motion to Dismiss asserts two reasons that venue is

incorrect.  First, it is asserted that venue is wrong under a traditional venue analysis.  Second, it

is argued that a forum-selection clause in one of the Deal Documents requires that this litigation

be brought in The Bahamas.

### A.    This is the Proper Judicial District

Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong" or

"improper." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571

U.S. 49, 55, 34 S.Ct. 568, 187 L.Ed.2d 48 (2013).  Whether venue is "wrong" or "improper"

depends on whether the court in which the case was brought satisfies the requirements of federal

venue laws. *Id*.  When a defendant objects to venue under Rule 12(b)(3), the plaintiff is required

to make only a *prima facie* showing of proper venue in order to survive a motion to

dismiss. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012). In assessing

whether plaintiff has made that showing, courts must construe all factual allegations in favor of

the plaintiff. *Id.*

Normally venue would be determined under 28 U.S.C. § 1391(b). However, this case

need not satisfy the section 1391(b) general venue requirements, because this proceeding is

ancillary to the appointment of a receiver and personal jurisdiction is proper. *See Bilzerian*, 378

F.3d at 1104 ("[T]he district court correctly concluded that, because the receiver's complaint was

brought to accomplish the objectives of the Receiver Order and was thus ancillary to the court's

exclusive jurisdiction over the receivership estate, venue was properly established."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("The laying of venue ...is authorized by 28 U.S.C. § 754, **which allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country**") (emphasis added).  Accordingly, venue is proper in this Court and the motion to dismiss on that ground should be denied.

**B.** **The Forum Selection Clause is Unenforceable or Should be Disregarded**

Defendants also argue that certain language in the Agreement for Sale creates a forum-selection clause requiring that this matter be dismissed for improper venue.  However, the forum selection clause is unenforceable for three reasons.  First, the Agreement for Sale attached to the Motion to Dismiss is incomplete.[6] Therefore, it is unknown what the entire Agreement for Sale says. Second, the language in the Agreement for Sale presents, at best, a permissive forum selection clause, not a mandatory provision requiring litigation be commenced in The Bahamas.  Third, even if the forum selection clause is binding and mandatory, this Court should adopt the reasoning in many Bankruptcy Courts and District Courts which have deemed forum selection clauses and arbitration provisions unenforceable against analogous Bankruptcy trustees.

**1.** **Defendants Argue for Dismissal Based on a Forum-Selection Clause in an Incomplete and Unsigned Document**

From a threshold level, the Agreement for Sale which is attached as Exhibit B to the Motion to Dismiss is demonstrably incomplete.  The signature block for Newport is blank.  Part of paragraph 7 and some or all of paragraph 8 are missing.  The paragraph cited by Defendants in support of their argument does not contain a heading.  Without certainty that one is looking at all relevant language in the Agreement for Sale on this point because a complete version has not

---

[6] The Agreement for Sale attached to the Complaint, while more complete than the version which Defendants attach to their Motion to Dismiss, is also incomplete.  The Receiver is unable to locate a complete version of the document.

been presented to the Court, the language that can be gleaned from the incomplete copy of the Agreement for Sale states immediately before the signature blocks that: "This Agreement and the rights and obligations of the parties hereto shall be governed by and construed under the law of The Commonwealth of the Bahamas and venue shall be in the Commonwealth of the Bahamas." However, no other Deal Documents, including the Indenture for Conveyance, the Mortgage, the Addendum to Agreement for Sale or the Agreement to Amend Indenture of Mortgage (Complaint, Exs. 2-5), contain the same or similar language.  Since the Defendants have presented the forum selection clause in a patently incomplete document, the Court should deny their request to enforce the provision on its face.

## 2.    The Forum Selection Clause is Permissive, Not Mandatory

"As a general matter, courts enforce forum selection clauses unless it would be unreasonable to do so. This presumption of enforceability, however, only applies if the forum selection clause is mandatory rather than permissive. A mandatory clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere. A permissive forum selection clause does not justify dismissal on the grounds that the plaintiff filed suit in a forum other than the one specified in the clause." *BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration*, 884 F.3d 463, 470 (4th Cir. 2018) (internal quotations and citations omitted).  "A forum selection clause is presumed permissive unless it contains specific language of exclusion. An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction in another unless the clause expressly sets forth specific language of exclusion." *Id*. at 472 (internal quotations and citations omitted).

In *BAE Systems Technology Solution & Services*, the Court found that the forum selection clause at issue did not contain any "specific language of exclusion." *Id*.  Rather, it simply

"conferred jurisdiction on a forum by stating that disputes 'shall be resolved through litigation and the Seoul Central Court shall hold jurisdiction.'"  *Id.*  The Fourth Circuit found this provision to be permissive, not mandatory since it "differs significantly from forum selection clauses found to be mandatory, which provide that a particular place constitutes the 'sole' or 'only' or 'exclusive' forum."  *Id.*

The forum-selection clause herein is very similar in language to the clause found to be non-mandatory in *BAE Systems Technology Solution & Services*, providing only that "venue shall be in the commonwealth of the Bahamas."  The term "sole" or "only" or "exclusive" does not appear in the language.  No reference is made to which of the courts in The Bahamas would hear the matter, nor is any reference made to any specific geographic location which is a significant omission, given that The Bahamas has 30 inhabited islands.[7]

While the provision does contain the word "shall" the Fourth Circuit has noted that "the use of 'shall' in the clause does not render it mandatory… the use of 'shall' in a forum selection clause is not dispositive, because, in context, the clause may still 'permit[ ] jurisdiction in one court but ... not prohibit jurisdiction in another.'" *Id.* (emphasis added, internal citations omitted). Because the clause here is permissive, there is no presumption in favor of enforceability, and the Court should proceed with a traditional *forum non conveniens* analysis which, as noted above, should be denied.

3. **Even if the Forum Selection Clause is Considered Mandatory, this Court Should Follow Bankruptcy and District Court Decisions that Do Not Bind Trustees to Forum Selection and Arbitration Clauses**

Assuming, for argument's sake, that the Agreement for Sale contained a binding forum selection clause, such provision runs afoul of the underlying equitable nature of the receivership.

---

[7] https://www.fao.org/jamaica-bahamas-and-belize/fao-in-jamaica-bahamas-and-belize/bahamas-at-a-glance/en/

This is not private litigation related to a dispute between two contract parties. This is a suit brought by the Receiver to recover funds belonging to the receivership estate.  As the Court is well aware, the *In re Sanctuary Belize Litigation* is a complex proceeding, with a multitude of defendants, assets and defrauded consumers.

Thus, the Receiver and his role in prosecuting this ancillary litigation is similar to that of a Bankruptcy Trustee asserting an adversary action related to a bankruptcy proceeding.   Equity receiverships and bankruptcy share the commons goals of marshalling, preserving, and distributing assets for the benefit of creditors: "[t]he goal in both securities-fraud receiverships and liquidation bankruptcy is identical – the fair distribution of the liquidated assets." *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir. 2010).

A South Carolina Bankruptcy Court addressed the applicability of a forum-selection clause that would have otherwise moved venue of an adversary proceeding to Texas in *In re Dozier Financial, Inc.*, 587 B.R. 637 (Bankr.D.S.C. 2018).  In that case, the Trustee filed a complaint against several defendants alleged to have caused losses to investors in debtor's business.  One of the contracts related to the complaint was a contract which provided that "[a]ny suit, action or proceeding arising out of or relating to this engagement letter shall only be brought in the State of Texas and you agree to the personal jurisdiction of the courts of the State of Texas."  *Id.* at 645. Similar to Defendants herein, the *Dozier* defendants moved to dismiss the adversary for improper venue under Rule 12(b)(3), arguing that Texas was the only proper venue for the litigation.

The *Dozier* court denied the motion to dismiss and found venue to be proper with the Bankruptcy Court.   While noting that forum selection clauses should be generally entitled to deference, the *Dozier* court found that public interest factors outweighed granting deference to

the forum selection clause. Overall, the *Dozier* court noted "Reflecting on the practical considerations that could make the trial easy, expeditious, or inexpensive, the local interest in deciding local controversies at home, the pending gathering and distribution of assets in this forum, the interests of the other Defendants, and judicial economy, the Court finds the public interests are best served by retention of the Estate and Investor Claims … together in this forum, and those interests present unusual circumstances that outweigh the deference due to the [forum selection clause]." *Id*. at 651.

Turning to the specifics, the *Dozier* Court noted that the "creditors' interests" in the bankruptcy favored keeping venue with the Bankruptcy Court "since the estate is often operating on limited funds and asserting actions solely to maximize the recovery to creditors."  *Id*. at 649. The Belize lot purchasers' interests favor venue remaining with this Court since the Receiver, like the *Dozier* Trustee, is working with limited funds and seeking to maximize recovery for the benefit of the defrauded lot purchasers.

The *Dozier* court noted the "pending gathering and distribution of assets in this forum" as another reason to retain the adversary action in the Bankruptcy Court.  *Id*. at 651.  Although "there is the public policy of enforcing a contract ... there [also] is the public policy of centralizing bankruptcy proceedings, and there is a strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy is pending." *Id.* at 649 (citing *In re Hechinger Inv. Co. of Delaware, Inc*., 288 B.R. 398, 402 (Bankr.D.Del. 2003)). "Because the bankruptcy system implicates interests far broader than the private rights of the two parties in question, **it is not unusual for prepetition contract obligations, particularly those dictating forum ... to be modified or even ignored in a bankruptcy case.**" *Walker v. Got'cha Towing & Recovery (In re Walker),* 551 B.R. 679, 690 n.21 (Bankr.M.D.Ga. 2016) (emphasis added).  Like

a bankruptcy court, the District Court that appoints a receiver "has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction" in order to provide a centralized forum to adjudicate issues related to the receivership and to administer the collection of assets. *Haile v. Henderson Nat. Bank*, 657 F.2d 816, 822 (6th Cir. 1981). The rationale in bankruptcy applies equally here.

By analogy, Bankruptcy Courts typically refuse to require a Trustee to arbitrate even in the face of express contractual provisions to do so. Defendants seek to use this forum selection clause not unlike an arbitration clause, by taking the matter away from this Court and moving it to a forum wholly unfamiliar with the underlying receivership. Courts have found arbitration provisions unenforceable against Bankruptcy trustees, preventing the arbitration of claims that are similar to the fraudulent transfer claims in this case. The Bankruptcy Courts that refuse to honor these provisions due so because of the inherent conflict with the underlying purposes of a Court to enforce its own orders, the impairment of a trustee's ability to marshal assets and pay harmed creditors, the arbitration's interference with "centralized resolution" of the issues and "the need to protect creditors … from piecemeal litigation." *See, e.g., In re Gandy*, 299 F.3d 489, 494-97 (5th Cir. 2002). "Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts," and "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *In re White Mountain Mining Co*., 403 F.3d 164, 169 (4th Cir. 2005)(internal citation omitted).

-19-

Enforcement of the forum selection clause would interfere with the Receiver's ability to collect and marshal assets for defrauded consumers, most of whom are United States citizens.  It would move resolution of this matter to a distant court that lacks this Court's years-long understanding of the underlying matter, may adversely impact this Court's centralized decision-making process and certainly will increase the legal fees and overall expenses incurred by the Receiver in litigating the dispute with Defendants.

Like those Bankruptcy Courts refusing to shackle a Bankruptcy trustee with an arbitration clause, this Court should retain venue of this matter since the concerns expressed in *In re Gandy* and other bankruptcy cases are equally relevant to equity receiverships. *See, e.g., S.E.C. v. First Sec. Co. of Chicago*, 507 F.2d 417, 420 (7th Cir. 1974) (upholding application of bankruptcy law to equity receivership); *S.E.C. v. Investors Sec. Leasing Corp.,* 476 F. Supp. 837, 842 (W.D.Pa. 1979) (same).

### 4. Even if Mandatory, the Court Should Decline to Apply the Forum Selection Clause Because the Agreement for Sale is Germane to Only Two of the Claims Asserted in the Complaint

The forum selection clause should not be enforced because only two of the claims in the Complaint[8] are directly related to the Agreement for Sale. In a receivership action, a District Court refused to enforce a forum selection clause since "it would require piecemeal litigation in multiple fora and, in some cases, might require multiple courts to adjudicate claims covering only portions of each transaction." *Carney v. Baracha*, 996 F.Supp.2d 56 (D.Conn. 2014). Likewise, the *Dozier* court dealt with a similar issue and was persuaded to not enforce the forum selection clause since the breach of contract claim related to the contract containing the forum

---

[8] The claims for relief in the Complaint are rescission (Claim 1), breach of contract (Claim 2), fraudulent transfer (Claims 3-6), unjust enrichment and constructive trust (Claim 7), alter ego and piercing the corporate veil (Claim 8) and turnover of receivership property (Claim 9).

-20-

selection clause was not the only cause of action.  The Trustee was instead pursuing "other substantial, overlapping claims" that the forum selection clause did not apply to.  *Dozier,* 587 B.R. at 650-51.  Here, only two of the nine claims asserted by the Receiver in the Complaint relate directly to the Agreement for Sale: the rescission claim and the breach of contract claim. Since the vast majority of the claims are not related directly to the Agreement for Sale, this Court should retain venue.

## V.      The Complaint States Valid Claims

Defendants conclude the Motion to Dismiss by arguing that the Receiver has failed to adequately plead each of the nine claims in the Complaint.[9] As set forth below, the Receiver has properly pled each of the claims. However, before making those arguments, the Receiver will demonstrate that Bahamian law should not control this matter. Further, the three purported affidavits and other extraneous materials submitted by Defendants in support of the Motion to Dismiss should not be considered for the reasons set forth in the Evidentiary Objections filed by the Receiver contemporaneously with this Opposition.  The guidance provided by *Twombly* and *Iqbal* demonstrates that the claims were properly pled and the Motion to Dismiss should be denied in its entirety.

### A.      California State Law, Not Bahamian Law, Should Apply

Defendants argue that Bahamian law applies to this matter due to a choice of law provision contained in the Agreement for Sale.  However, as with the venue provision, the Court is being asked to enforce a choice of law provision from a document that is, on its face, incomplete.  As discussed above in the context of the venue provision, no other Deal Documents, including the Indenture for Conveyance, the Mortgage, the Addendum to Agreement for Sale or

---

[9] In several instances, the Motion to Dismiss erroneously refers to an "Amended Complaint." There is only the Complaint and there is no "Amended Complaint."

the Agreement to Amend Indenture of Mortgage (Complaint, Exs. 2-5) contain the same or similar language.  Since the Defendants have presented the choice of law provision in a patently incomplete document, the Court should deny their request to enforce the provision without further inquiry.

If the Court is nevertheless inclined to consider the choice of law provision found in the incomplete Agreement for Sale, a federal court exercising diversity or pendent jurisdiction over state law claims must apply the choice of law rules of the forum in determining which law governs those claims. *Klaxon Company v. Stentor Electric Manufacturing, Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *In re Merritt Dredging Co.,* 839 F.2d 203, 206 (4th Cir. 1988). Generally, a choice-of-law provision will be honored in Maryland, unless "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the forum state precludes the application of the … provision" *American Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 572, 659 A.2d 1295, 1301 (1995).     Here the "strong public policy" factor is met, because Defendants assert in the Motion to Dismiss that Receiver's claims would not be recognized under Bahamian law. Maryland courts have refused to honor choice of law provisions that invalidate a party's claim. For instance, a choice of law provision was not followed when doing so would import another forum's law that would negate a party's right to a mechanics lien claim.  *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 650 A.2d 246 (1994).  Likewise, in *Three M Enters., Inc. v. Texas D.A.R. Enters., Inc.,* 368 F.Supp.2d 450 (D.Md. 2005), the Court declined to honor a choice of law provision when doing so would utilize another state's law that declined to protect a franchisee that would be protected under Maryland law.

California law would govern the contract and rescission claims since the choice-of-law provision is unenforceable.  "Absent a choice-of-law provision in [a] contract, [Maryland] courts have applied the rule of *lex loci contractus* to matters regarding the validity and interpretation of contract provisions." *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.,* 338 Md. 560, 573, 659 A.2d 1295 (1995). "Under this principle, the law of the jurisdiction where the contract was made controls its validity and construction." *The United States Life Ins. Co. v. Wilson,* 198 Md.App. 452, 463, 18 A.3d 110 (2011) (citation omitted). "A contract is made in the place where the last act occurs necessary under the rule of offer and acceptance to give the contract a binding effect." *Cont'l Cas. Co. v. Kemper Ins. Co.,* 173 Md.App. 542, 548, 920 A.2d 66 (2007) (citation omitted).   While the Agreement for Sale attached by Defendants to its Motion to Dismiss is only signed by Bella Mar, the copy of the Agreement attached to the Complaint is signed by both Newport and Bella Mar.  Thus, it appears that the last act related to the contract was its signing by Newport by its officer based in California.  California law therefore should apply to the contract claims.

Moreover, even if the choice of law provision did apply, it would only govern the breach of contract and rescission claims asserted as the first and second claims for relief in the Complaint since those are the only claims directly related to the Agreement for Sale.  For those claims sounding in tort, Maryland's choice of law rules, dictated by the *lex loci delicti* approach, require that where the events giving rise to a tort action occur in more than one state, Maryland applies the law of the State where the injury occurred. *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 220, 230-32 (Md. 2000) (citing *Hauch v. Connor*, 453 A.2d 1207, 1209-1215 (Md. 1983)); *Sherrod v. Achir*, 817 A.2d 951 (Md. Ct. Spec. App. 2003) (finding that Maryland choice of law rules provide that when analyzing tort actions, the substantive tort law of the place where

the wrong occurred controls).  Here, the injury or acts giving rise to the Complaint occurred in

California.  Newport, though a Wyoming corporation, was located in California.   Newport made

the payments comprising the fraudulent transfer claims from its office in California.

Claims 3-6 sounding in fraudulent transfer should be governed by California law because

either under a *lex loci contractus* or a *lex loci delicti*  approach, California law would apply.  *See*

*In re TMST, Inc.,* 610 B.R. 807, 819 (Bankr.D.Md. 2019) (noting that it is unclear if Maryland

considers fraudulent transfer claims as sounding in tort or contract, but if considered as a tort

claim "because the Plaintiffs are corporations, their injury is suffered where their principal place

of business is located.").   For the Receiver's unjust enrichment claim, Maryland courts have

applied the doctrine of *lex loci contractus* to such claims.  *RaceRedi Motorsports, LLC v. Dart*

*Machinery, Ltd.,* 640 F.Supp.2d 660 (D.Md. 2009*)*.  For the Receiver's claim sounding in alter

ego and piercing the corporate veil, *lex loci delicti* dictates California law should apply.  Finally,

the Receiver's claim for turnover of receivership property is essentially a claim seeking

enforcement of this Court's own orders and is not dependent on substantive state law.

**B.**       **The Extraneous Evidence Attached to the Motion to Dismiss is Improper**

Defendants attempt to offer extraneous evidence in support of the Motion to Dismiss in

the form of various affidavits and exhibits. Typically, the allegations pled in the Complaint are

deemed to be true when assessing the merits of a motion to dismiss.  The inclusion of extraneous

material would convert the Motion to Dismiss to a motion for summary judgment with the

plaintiff being given time to respond with pertinent material.   Fed. R. Civ. Proc. 12(d); *See*, *e.g.,*

*Cannon v. Wells Fargo Bank, N.A.*, 2014 WL 672687, *7 (D.Md. 2014) (noting that when

reviewing a motion to dismiss, the court "may consider documents attached to the complaint, as

well as documents attached to the motion to dismiss" but only if the extraneous documents are

"integral to the complaint and **their authenticity is not disputed"**) (internal citations omitted,

emphasis added); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3rd Cir. 1993) (to decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record (*citing* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990); *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir. 1993); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir. 1988)); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402-403 (4th Cir. 2003) (discussing jurisdictional discovery).   However, as set forth in the Evidentiary Objections filed with this Response, the Receiver objects to inclusion of this extraneous and inadmissible evidence, replete with objectionable and unfounded testimony.  It should be stricken and not considered by the Court, negating the need to treat the Motion to Dismiss as a motion for summary judgment.

### C.      Standards on a Motion to Dismiss

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). When evaluating a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id*. A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557). Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### 1.  The First Claim for Rescission is Adequately Pled

The rescission claim is adequately pled under California law.  The Complaint alleges that the Agreement for Sale should be rescinded since it was illegal or unconscionable and the funds were misappropriated from lot purchasers.  Complaint, ¶¶ 60-62, 81.  An unconscionable contract is subject to rescission under California law.  *See, e.g., Donovan v. RRL Corp.*, 26 Cal. 4th 261, 27 P.3d 702 (2001).  An illegal contract is likewise subject to rescission under California law.  *See* Cal. Civ. Code §1689(b)(5);  *Robertson v. Hyde*, 58 Cal.App.2d 667, 672 137 P.2d 703 (1943) ("If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed.").

The Complaint also alleges that the Agreement for Sale is subject to rescission since it was made with mutual mistake for three reasons.  First, the parties actually intended for a stock sale conveying the real estate through the sale of its owner Bella Mar, as opposed to the direct sale of the real estate as set forth in the Agreement for Sale.  Complaint, ¶¶ 48-50, 82.  Second, the parties believed structuring the sale in that manner would avoid the significant Bahamian stamp tax on real estate sales.  Complaint, ¶¶ 51, 82.  Third, the parties believed Newport was authorized to own real estate in The Bahamas when it was not.  Complaint, ¶¶ 52, 82.  Mutual mistake is grounds to rescind a contract.  *See, e.g., Guthrie v. Times-Mirror Co.,* 51 Cal.App.3d 879, 884, 124 Cal.Rptr. 577 (1975) (stating "in California a mutual mistake, whether of fact or law, which affects an essential element of the contract and is harmful to one of the parties is subject to rescission by the party harmed.").

Finally, the Complaint alleges that the Agreement for sale should be rescinded for lack of adequate consideration in that the Long Island Parcel was purchased for $100,000 but sold for $2,800,000, nothing was received in exchange for the $1,065,000 in payments that were made,

and Bella Mar did not have sufficient title to convey ownership of the Long Island Parcel.

Complaint, ¶¶ 31, 41, 42, 54-58, 83.  Lack of adequate consideration is grounds to rescind a

contract under California law.  *See* Cal. Civ. Code §1689(b)(2)-(4).

### 2.    The Claim for Breach of Contract is Adequately Pled

Under California law, the elements of a cause of action for breach of contract are: "(1)

the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,

and (4) the resulting damages to plaintiff." *Hamilton v. Greenwich Investors XXVI, LLC*,  195

Cal.App.4th 1602, 1614, 126 Cal.Rptr.3d 174 (2011)(citation omitted).

In the Complaint, the Receiver alleges that Plaintiff performed under the applicable

contract, that Bella Mar "materially breached the contract by, among other things, (i) improperly

and prematurely issuing the November Notice of Default; (ii) improperly requiring Newport to

cure any payment default in 21-days; (iii) to the extent the 21-day period was the applicable

deadline, not allowing Newport the full 21-days to cure the default; and (iv) by taking the

position that ownership of the Long Island Parcel had reverted back to Bella Mar, without any

support in the Deal Documents or Amended Mortgage, without any court action or without any

formal notice or other action other than two emails; and violating the stay against creditor action

imposed by the TRO" and that Newport suffered damages in the amount of $1,065,000.

Complaint, ¶¶ 88-91. The Receiver has adequately pled a cause of action for breach of contract.

Defendants ignore the allegations in the Complaint, instead arguing that a breach of

contract action cannot be maintained since Newport failed to fully pay the purchase price. Such

argument ignores the Complaint which alleges that it was Defendants' actions that caused the

breach, not the actions of Newport. The Motion to Dismiss further states that Bella Mar "was

always willing and able to transfer good title to Newport upon purchase price paid."  Such

statement not only ignores the breach, as alleged by the Complaint, but is unsupported by the Complaint or even by any of the improper material attached to the Motion to Dismiss.

### 3. The Four Claims for Fraudulent Transfer are Adequately Pled

The Motion to Dismiss next seeks dismissal of the four claims (Claims 3 through 6) in the Complaint which state various claims for relief based on the California Uniform Voidable Transfer Act ("CUVTA"). *See* Cal. Civ. Code § 3439 *et seq.*   Claim 3 seeks to void the payments made by Newport to Bella Mar as being "actually" fraudulent. Claims 4 through 6 seek recovery on various claims of "constructive" fraud which generally allege that the Receivership Entities were insolvent at the time of the transfers and received nothing of value in exchange for the payments.

Defendants make a cursory argument that all four claims for relief should be dismissed since California is not the forum state and Bahamian law is applicable.  As discussed above, the Receiver asserts that while California is not the forum state, its law should govern these claims, not Bahamian law.

Defendants next argue that dismissal is proper since they took the transfers in good faith and for a reasonably equivalent value.  While the CUVTA does offer certain protections to good faith transferees who give value, Defendants' argument fails for at least two reasons.  First, it appears that the section referenced by the Motion to Dismiss is Section 3439.08 of the CUVTA which states that "a transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor."  However, that protection is only afforded against claims brought under Section 3439.04(a)(1) which is a claim for "actual" fraudulent transfers.  Thus, this defense, to the extent it applies at all, would only be applicable to Claim 3 of the Complaint.  The remaining voidable transfer claims are "constructive" fraudulent transfer claims and are not impacted by

this defense.  More importantly, this is only an **affirmative defense** to be raised by Defendants and it is only applicable if proven by the transferee by the preponderance of the evidence in litigation of the Complaint.  *See* Cal. Civ. Code § 3439.08(g); *Nautilus, Inc. v. Yang*, 11 Cal.App.5th 33, 40, 217 Cal.Rptr.3d 458 (2017) (stating that whether transferee acted in good faith and gave reasonably equivalent value is a "question of fact" to be proven by the preponderance of the evidence).  Thus, the issue of whether Defendants were good faith transferees who gave reasonably equivalent value is improperly raised in the Motion to Dismiss.

Defendants also argue that the Receiver is not a "creditor" of Newport and thus lacks the ability to pursue the voidable transfer claims.  Such an argument contains a fundamental misunderstanding of receivers and their ability to recover voidable transfers.  Receivers have standing to bring fraudulent transfer actions against entities who received payment from the companies in receivership. The term "creditor" as used in the CUVTA refers to creditors of Newport and the other Receivership Entities, in particular the defrauded lot purchasers.   *See* Complaint, ¶61.   Those are the harmed creditors entitling the Receiver to prosecute this action.

The Receiver has standing to bring fraudulent transfer actions on behalf of Newport to recover monies for the harmed creditors.  Receivers are clearly authorized to bring fraudulent transfer actions.  In the seminal case of *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995), the Seventh Circuit stated that not only could an equity receiver sue to redress injuries to the entity in receivership, but an equity receiver also had standing to sue on behalf of the creditors of the entity in receivership. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir.  2008) (equity receiver authorized to bring "actual" and "constructive" fraudulent transfer suits); *Quilling v. Cristell*, 2006 WL 316981, *5 (W.D.N.C. 2006) (holding fraudulent transfer claims were properly brought by the Receiver on behalf of the receivership entities making the transfers).

Finally, Defendants argue that the Receiver's fraudulent transfer claims must fail since the source of the money was from an outside investor. In other words, Defendants argue that it is necessary that the transfer sought to be recovered be somehow attributable to the victimized lot purchasers. As discussed above, (i) the affidavit of Matthew Bowyer asserting this allegation should be stricken and disregarded; and (ii) the Receiver has previously provided information to this Court that lot purchaser funds were comingled into the Newport accounts from which the $1.065 million in payments to Bella Mar originated. Further, Boyer's affidavit states that in 2018, he allegedly tendered an investment of $1,000,000 "solely" to be used as the down payment for the Long Island Parcel. However, the down payment set forth in the Agreement for Sale was for $750,000, not $1,000,000 and it was paid by Newport in 2017 in three installments of $250,000 between August 28, 2017 and September 28, 2017. Complaint, ¶ 53. Thus, Bowyer's assertions are demonstrably false, because it is undisputed that the down payment was made in 2017, not 2018 and because the down payment was only $750,000.

In any event, CUVTA provides that it applies to transfers of any asset of a debtor. *See* Cal. Civ. Code §3439.01. The Receiver has pled and already proven in the underlying *In re Sanctuary Belize Litigation* that the $1,065,000 paid to Bella Mar came from Newport's bank accounts (Doc. 453-2 at ¶ 12). There is no requirement that the Receiver show any more than this in order to state a claim under the California Uniform Voidable Transfer Act.

### 4. The Claim for Unjust Enrichment/Constructive Trust is Adequately Pled

Defendants next argue that the claim for Unjust Enrichment and Constructive Trust[10] has not been adequately pled. Under California law,[11] the elements for a claim of unjust enrichment

---

[10] Constructive trust is a remedy under California law, not a claim for relief, and thus not amenable to a motion to dismiss.

[11] Defendants cite to Maryland law. The Receiver asserts there is no meaningful substantive

are "receipt of a benefit and unjust retention of the benefit at the expense of another."

*Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000).  "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched."

*Otworth v. Southern Pac. Transp. Co.,* 166 Cal.App.3d 452, 460, 212 Cal.Rptr. 743 (1985)(internal citations omitted).

Rather than asserting that the  Receiver has failed to allege the proper elements, Defendants merely argue that the value of the Long Island Parcel exceeded the purchase price and, presumably referring to the Bowyer Affidavit, that the source of the $1.065 million was from an outside investor, not from funds comingled with those from lot purchases at the Sanctuary Belize project.  As discussed above, this material is inappropriately considered in the context of the Motion to Dismiss and should be stricken.  Furthermore, the Bowyer Affidavit has absolutely no admissible testimony or supporting documentation regarding his purported payment of these funds and his testimony is demonstrably false.  Further, the Receiver has provided information to this Court detailing the source of Newport's money, none of which comes from Bowyer, and that the $1,065,000 paid to Bella Mar came directly from Newport.  *See* Doc. 453-2 at ¶¶ 11-12 in the *In re Sanctuary Belize Litigation*.  "[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  Therefore, when construing this claim in the light most favorable to the Receiver, this claim has been adequately pled.

---

difference between Maryland or California law on this claim and this claim is adequately pled regardless of which State's law governs.

**5.      The Claim for Piercing the Corporate Veil/Alter Ego is Adequately Pled**

Defendants next move to dismiss the claim to pierce the corporate veil and find that Diaz-Cueto is the alter ego of Bella Mar.  Under California law,[12] "the conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court. This is because the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact." *Alexander v. Abbey of the Chimes*, 104 Cal.App.3d 39, 46, 163 Cal.Rptr. 377) (1980) (internal citations omitted).  There are two requirements for disregarding the corporate entity: first, that there is a sufficient unity of interest and ownership between the corporation and the individual or organization controlling it that the separate personalities of the individual and the corporation no longer exist and, second, that treating the acts as those of the corporation alone will sanction a fraud, promote injustice, or cause an inequitable result. *Webber v. Inland Empire Investments, Inc.*, 74 Cal.App.4th 884, 900, 88 Cal.Rptr.2d 594 (1999).

In the Complaint, the Receiver has met  these factors by alleging that Diaz-Cueto is the alter ego of Bella Mar in that, *inter alia* (1) Bella Mar had grossly inadequate capital; (2) Bella Mar was a shell company with no assets other than possible ownership of rights to the Long Island Parcel, no business operations and/or no employees; (3) Bella Mar failed to observe formal legal requirements for the conduct of business of a corporation; (4) Diaz-Cueto disregarded the separate corporate existence of Bella Mar; and (5) Bella Mar was owned, dominated and controlled by Diaz-Cueto who operated Bella Mar for his personal benefit.  It is further alleged that the "shareholders" of the company were office workers in the law office of

---

[12] Defendants argue Maryland law applies.  Receiver submits that the allegations in the Complaint would satisfy either Maryland or California law.

Diaz-Cueto's Bahamian lawyer.  Complaint, ¶¶ 13, 24, 25, 26 and 123.  Further, the Receiver has alleged that the retention of the funds by Defendants would promote injustice or certainly cause an inequitable result in that the funds were wrongfully taken from Sanctuary Belize lot purchasers, were made in exchange for a vastly overpriced parcel of land being sold by ambiguous and unenforceable Deal Documents later to be illegally terminated by Diaz-Cueto in violation of the stay created by this Court's Receiver Orders and that Defendants wrongfully took the untenable and improper position that ownership of the Long Island Parcel, without any court action or formal notice other than two emails, had reverted back to Bella Mar and that Bella Mar was permitted to retain $1,065,000, of which Diaz-Cueto received at least $881,245.00, in exchange for which Newport received nothing. Complaint, ¶¶ 60, 70-73, 76, 77 and 78.  Thus, the Receiver has adequately pled this cause of action by showing both that there is sufficient unity of interest and ownership between Bella Mar and Diaz-Cueto such that the separate personalities of the individual and the corporation no longer exist and that treating the receipt and retention of the funds by Bella Mar as acts solely of the corporation alone will sanction a fraud, promote injustice, or cause an inequitable result.

> **6.      The Claim for Turnover of Receivership Property is Adequately Pled**

Finally, Defendants argue that the claim for turnover of receivership property should be dismissed.  This argument is not supported by any case or statutory citation, nor does it make any reference to the Receivership Orders giving rise to the Receiver's powers granted to him by this Court.  Rather, Defendants urge dismissal based on the extraneous material attached to the Motion to Dismiss which allege that the Long Island Parcel was worth more than the purchase price and that the $1.065 million in funds were not taken from funds comingled with the Sanctuary Belize lot owners, but were instead provided by an outside investor.  For the reasons stated above, this material is not appropriately considered in connection with the Motion to

Dismiss and the Receiver has already demonstrated to this Court that the $1.065 million was paid by Newport and is not attributable to Bowyer.  Defendants' arguments should be disregarded by the Court.

Further, it is clear that the Receiver Orders give the Receiver the ability to institute litigation to collect assets of the receivership estate.  It is plainly alleged that the $1.065 million in transfers are property of the receivership estate and Defendants wrongfully withhold these funds from the Receiver. Complaint, ¶¶ 126-129.  This claim has been properly pled.

## VI.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

Dated:  February 10, 2022

By:  /s/ *Gary Owen Caris*
Gary Owen Caris (CA Bar No. 088918)
Admitted *Pro Hac Vice* 8/19/21
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone:      (310) 284-3880
Facsimile:      (310) 284-3894
Email:          gcaris@btlaw.com


By:  /s/ *James E. Van Horn*
James E. Van Horn (Bar No. 29210)
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue, NW,
Suite 500
Washington, DC 20006
Telephone:      (202) 289-1313
Facsimile:      (202) 289-1330
Email:          jvanhorn@btlaw.com


By:   */s/  Kevin C. Driscoll, Jr.*
Kevin C. Driscoll, Jr.
Admitted *Pro Hac Vice* 12/21/21
BARNES & THORNBURG LLP
One N. Wacker Dr., Suite 4400
Chicago, Illinois 60606
Telephone:      (312) 357-1313
Facsimile:      (312) 759-5646
Email:          kevin.driscoll@btlaw.com


Attorneys for Plaintiff, Marc-Philip
Ferzan of Ankura Consulting Group,
LLC, as Court-appointed Receiver in
the *In re Sanctuary Belize Litigation*