## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ROBB EVANS & ASSOCIATES LLC,** *as Court Appointed Receiver in the In re Sanctuary Belize Litigation* | * * * * * | |
| **Plaintiff,** | * * | |
| **v.** | * * | **Civil No. 21-2049** |
| **JORGE DIAZ-CUETO**, *et al.* | * * | |
| **Defendants.** | * * * | |

### MEMORANDUM OPINION

This case arises out of the *In re Sanctuary Belize Litigation*, a Federal Trade Commission (FTC) enforcement action in which the Court established a Receivership to hold and manage assets frozen and seized in the context of that case. Plaintiff, the Receiver appointed in *In re Sanctuary Belize Litigation*, has sued Jorge Diaz-Cueto individually and Bella Mar Estates, Ltd., asserting claims for rescission of contract, breach of contract, avoidance of fraudulent transfer, unjust enrichment, piercing the veil/alter ego, and turnover of receivership property. ECF No. 1. Defendants have filed a Motion to Dismiss, ECF Nos. 12; 30. For the reasons the follow, the Motion is **DENIED**.

### I.    BACKGROUND

As explained in detail in the Court's prior Opinions in the *In re Sanctuary Belize Litigation*, the FTC brought that case under Section 13(b) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b) and the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarking Act"), 15 U.S.C. §§ 6101-6108. *See In re Sanctuary Belize Litigation,* 18-cv-3309-PJM, ECF Nos. 1020, 1109. The FTC alleged that Defendants in that case had engaged in a years-long scheme to defraud consumers in selling investment property at "Sanctuary Belize," a supposed top-tier resort in Belize, Central America. The FTC alleged that the resort did not exist as advertised.[1]

In the course of that litigation, this Court established a Receivership to manage assets that were frozen and later collected pursuant to its judgments in favor of the FTC. Together with its Ex Parte Temporary Restraining Order on November 5, 2018, the Court appointed Robb Evans and Associates, LLC as the Temporary Receiver. The Receiver's role was made permanent pursuant to Preliminary Injunctions entered on February 9, 2019 and October 3, 2019, and was continued when the Court issued its Permanent Injunction and Monetary Judgment Against Defaulting Defendants on January 13, 2021 and its Amended Final Order for Permanent Injunction and Monetary Judgment Against Defendants Andris Pukke, Peter Baker, and Luke Chadwick on March 24, 2021. Having been advised of the appointed Receiver's desire to withdraw from the case, on October 26, 2021, the Court appointed Marc-Philip Ferzan of Ankura Consulting Group, LLC as the successor Receiver. Counsel for the Receiver remained unchanged.

On August 12, 2021, the Receiver filed this suit against Bella Mar Estates, Ltd. ("Bella Mar"), a Bahamian corporation, and Jorge Diaz-Cueto, the owner and President of Bella Mar and

---

[1] Beginning January 21, 2020, the Court held a seventeen-day bench trial. In its August 28, 2020 Memorandum Opinion the Court found that the Defendants comprising the common enterprise at Sanctuary Belize ("SBE") had violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a) and the Telemarketing Sales Rules (TSR), 16 C.F.R. Part 310 in connection with the marketing and sale of real estate investments and related services. The Court granted default judgments as to all individual Defendants and Corporate Defendants who were served with process but had not appeared in the proceeding, with the exception of Corporate Defendant Newport Land Group, which was later found jointly and severally liable along with Defendants that had appeared. *See* ECF No. 1020 at 178. The Court imposed a restitution award of $120.2 million against all but one Defendant for violation of the FTC Act and a concurrent contempt sanction of $120.2 million against all Defendants for violations of the TSR. ECF No. 1020 at 161; ECF No. 1109 at 2-3. Certain Defendants have filed notices of appeal to the Fourth Circuit, where the case is now pending. *See* ECF Nos. 1200, 1208, 1210.

a United States citizen and resident of Florida. Compl. ¶¶ 12-13. The Receiver states that in its search for assets related to the Court's Receivership Orders, it discovered that misappropriated funds from Sanctuary Belize lot purchasers had been used towards the attempted purchase of a 424-acre tract of land in The Bahamas known as the "Long Island Parcel" (the "Parcel"), property purportedly owned by Bella Mar.[2]

Indeed, all parties appear to agree that in August 2017 Newport Land Group, LLC (NLG), one of the corporate defendants in the *In re Sanctuary Belize Litigation* and part of the common enterprise SBE, entered into an agreement with Bella Mar to purchase the Parcel for $4,00,000.00, later reduced to $2,800,000.00.[3] The Receiver further alleges that the purchase price was in gross excess of the actual value of the property.[4] Compl. ¶¶ 41, 57, 63; Defs.' Br. Mot. Dismiss 4-5 (hereinafter, "Defs.' Br."). The sale and purchase deal comprised four documents: an Agreement for Sale (Compl. Exhibit 1), an Indenture of Conveyance (Compl. Exhibit 2), an Indenture of Mortgage (Compl. Exhibit 3), and an Addendum to Agreement for Sale (Compl. Exhibit 4) (together, the "Deal Documents"), which it has attached to the Complaint.[5] Compl. ¶ 43. The terms of the Deal included a down payment of $750,000.00 to Bella Mar, to be followed by

---

[2] The Receiver alleges that the Long Island Parcel is, in fact, Bella Mar's only asset. Compl. ¶ 27. Moreover, the Receiver suggests that Bella Mar may not actually hold legal title to the Long Island Parcel. Compl. ¶¶ 30-39. It notes that Bella Mar obtained the parcel through a transfer from Island Acquisitions Ltd., another entity owned and controlled by Diaz-Cueto, which had exercised a purchase option for the parcel in 2002 or 2003 for $10,000 to $100,000. Compl. ¶¶ 30-36. The Receiver asserts that Bella Mar held the Parcel under "best title," and not a certificate of title. Compl. ¶¶ 31-39.

[3] The Receiver alleges that the purchase price was reduced after a title issue was discovered with respect to a 47-acre tract of the Parcel ("Rosanna Newman tract"). Compl. ¶¶ 54-57.

[4] The Receiver notes that Island Acquisition, Ltd. had paid just $10,000 to $100,000 for the Parcel and that the island is largely undeveloped. Compl. ¶¶ 31-39.

[5] The Receiver has submitted an incomplete set of the documents, which it says that it is the most complete set of the documents it has been able to obtain. *See* Resp. 14 n. 6. The Agreement for Sale, Exhibit 1, is missing two signatures under the "Signed Sealed and Delivered" lines; and at least two pages appear to be missing from the Indenture of Mortgage, Exhibit 3, where Article 1 and Article 7 would ordinarily be. Furthermore, the document is not notarized.

monthly payments.[6] Compl. ¶ 41. The Indenture of Conveyance was to be executed the day of the execution of the Sale Agreement and would be held in escrow by the lender until the mortgage loan was paid. Ex. 1 ¶ 10. All parties agree that NLG made the down payment and several monthly payments thereafter, totaling $1,065,000.[7] Defs.' Br. 5; Compl. ¶ 59. The Receiver alleges that these payments were made with funds misappropriated from lot purchases for Sanctuary Belize. Compl. ¶ 60. As will be discussed further *infra*, Defendants contend the payments came from a single investor in NLG, Matthew Bowyer.

On August 18, 2018, NLG failed to timely make a monthly payment on the Bella Mar deal, such that on September 4, 2018, Diaz-Cueto sent NLG a notice of default, although the Receiver points out that the Deal Documents do not appear to contain provisions related to default. Compl. ¶¶ 66-67. NLG eventually made up the missed payment, but then missed the payment deadline for November 18, 2018, shortly after initiation of the *In re Sanctuary Belize Litigation* case and the Court's appointment of the temporary Receiver and freeze of certain defendants' assets, NLG's included. Compl. ¶ 69. Indeed on November 18, 2018, the Receiver alleges that Diaz-Cueto called Frank Connelly,[8] the CEO of NLG, and learned of the *In re Sanctuary Belize Litigation*. Compl. ¶ 69. Then, on the morning of November 19, 2018, Diaz-Cueto sent NLG a "November Notice of

---

[6] The Receiver alleges that the parties were actually contemplating a transaction whereby, rather than buying the Parcel outright as set forth in the Deal Documents, NLG would instead purchase Bella Mar stock, acquiring a 100% ownership of Bella Mar. Compl. ¶ 49. Bella Mar and NLG believed, incorrectly says the Receiver, that a transaction set up this way would avoid the 10% stamp tax imposed on real estate sales in The Bahamas. Compl. ¶ 50-51. The Receiver also alleges that NLG and Bella Mar proceeded on the assumption that NLG could own property in The Bahamas, which it could not until it was properly registered as a foreign corporation with the Bahamian government, and NLG never was so registered. Compl. ¶ 52.

[7] NLG made three payments of $250,000 to Bella Mar for the down payment on or about August 28, 2017, and September 28, 2017. Compl. ¶ 53. Thereafter, NLG made nine monthly payments of $35,000 each until shortly before the beginning of the Sanctuary Belize Litigation. Compl. ¶ 59. Altogether, the down payment and monthly payments amounted to $1,065,000. Compl. ¶ 59.

[8] Frank Connelly's real name is Frank Costanzo. He has also gone by the aliases Frank Green, Frank Peerless Green, Frank Connelly, and Frank Connelly-Costanzo. Compl. ¶¶ 20-21.

Default," in apparent violation of this Court's stay of creditor activity under the TRO for Receivership Entities, including NLG. Compl. ¶¶ 69-70. The Notice stated that if payment was not timely made, NLG would be issued a "Final Default" letter "terminating all its rights title and interest to the subject land in Long Island, Bahamas." Compl. ¶ 70.

The Receiver alleges that Diaz-Cueto, in numerous conversations with Connelly, became concerned about his ability to recover the balance owed by NLG, some $1,735,000. Compl. ¶ 72. Therefore, Diaz-Cueto decided to "terminate" the sale but retained the $1,065,000 already paid by NLG, of which $881,245 had been transferred to Diaz-Cueto personally. On December 10, 2018, Diaz-Cueto, took the position that the payments NLG made were forfeited to Bella Mar, and issued a "Final Notice" purporting to terminate NLG's rights under the agreement. Compl. ¶¶ 71-72, 74. Diaz-Cueto did this, the Receiver contends, knowing of this Court's stay preventing any detriment to Receivership Entities, including NLG. Compl. ¶ 73.

In sum, the Receiver "alleges that the payments received by Bella Mar and Diaz-Cueto were made in exchange for a vastly overpriced parcel of land being sold by ambiguous and unenforceable Deal Documents later to be illegally terminated by Diaz-Cueto in both violation of the Deal Documents and the stay created by the TRO." Compl. ¶ 78.

In this suit, the Receiver makes nine claims for relief: Rescission of Contact (against Bella Mar) (Count 1); Breach of Contract (against Bella Mar) (Count 2); Avoidance of Fraudulent Transfer Under California Civil Code § 3439.04(a)(1)  (against both Defendants) (Count 3); Avoidance of Fraudulent Transfer Under California Civil Code § 3439.04(a)(2)(A) (against both Defendants) (Count 4); Avoidance of Fraudulent Transfer Under California Civil Code § 3439.04(a)(2)(B) (Count 5); Avoidance of Fraudulent Transfer Under California Civil Code § 3439.05 (against both Defendants) (Count 6); Unjust Enrichment/Constructive Trust (against both

Defendants) (Count 7); Piercing the Veil/Alter Ego (against Diaz-Cueto) (Count 8); and Turnover of Receivership Property (against both Defendants) (Count 9). The Receiver seeks to have the $1,065,000.00 in NLG funds acquired from the victims of SBE, plus interest, turned over to the Receiver, $881,245.00 of which, it claims, is held by Defendant Diaz-Cueto specifically. Compl. ¶¶ 130-131.

On November 23, 2021, Diaz-Cueto, who is apparently a member of the Bar of the State of Florida, on behalf of himself and Bella Mar, filed a Motion to Dismiss the Receiver's suit. ECF No. 12. On January 10, 2022, Plaintiff filed a Motion to Strike, noting that Diaz-Cueto's appearance before the Court appeared improper. ECF No. 19. Indeed, upon further inspection, the Court discovered that Diaz-Cueto had entered an appearance as if this case were a Multi District Litigation case (it is not). In an Order dated January 18, 2022, the Court deemed Diaz-Cueto to be appearing *in proper person* as an out-of-state attorney on behalf of himself and Bella Mar Estates, Ltd., and instructed him to retain local counsel with respect to Bella Mar, as required by Local Rule 101.1.b. ECF No. 23.

On January 21, 2022, local counsel entered an appearance on behalf of all Defendants, including Diaz-Cueto, and the Court directed local counsel to sign the Motion to Dismiss (which lacked any signature when first filed by Diaz-Cueto).

On January 28, 2022, local counsel filed a signed Motion to Dismiss, but soon discovered that the version he filed was not identical to the version first filed by Diaz-Cueto. On February 2, 2022, local counsel filed the Motion again, this time submitting a Motion effectively identical to the first with just a signature added.[9] ECF No. 30.

---

[9] One exhibit changed somewhat between the original and signed filing, *see* n. 9 *infra*.

The Receiver has responded in opposition and has filed a notice of Evidentiary Objections. ECF Nos. 31, 32. Defendants have replied. ECF Nos. 33, 34.

Finding no hearing necessary, s*ee* Local Rule 105(6), the Court addresses these matters.

## II.    ANALYSIS

### A.  Evidentiary Objections

The Receiver objects to Defendants' submission of various affidavits and exhibits attached to the Motion to Dismiss. *See* Plaintiff's Evidentiary Objections, ECF No. 32. These are: Exhibit A, an opinion by Elliott Lockhart, the attorney who purportedly represented NLG with respect to the agreement to purchase the Parcel ("Lockhart Opinion as to Title"); Exhibit B, an apparently incomplete copy of the "Agreement for Sale"; Exhibit C, emails between Diaz-Cueto and Frank Connelly;[10] Exhibit D, an affidavit by Matthew Bowyer, the purported source of the funds used for the purchase of the Parcel ("Bowyer Affidavit"); Exhibit E, an appraisal of the Parcel ("Appraisal); and Exhibit F, an affidavit by Diaz-Cueto ("Diaz-Cueto Affidavit").

The Receiver notes that, ordinarily, a Motion to Dismiss is assessed based on allegations in the Complaint. *See* Fed. R. Civ. P. 12(d). While the Receiver acknowledges that a court may consider documents attached to the complaint "as well as documents attached to the motion to dismiss," this is only if the extraneous documents are deemed "integral to the complaint and their authenticity is not disputed." Resp. 1-2, ECF No. 32, *citing Cannon v. Wells Fargo Bank, N.A.*, No. PWG-13-1324, 2014 WL 672687, at *7 (D. Md. Feb. 20, 2014) (internal citations omitted). The Receiver submits that, except to the extent the exhibits and affidavits address personal

---

[10] As stated, Defendants re-filed the Motion to Dismiss after the Court discovered that the original filing (ECF No. 12) lacked an attorney signature and that Diaz-Cueto was not authorized to file on behalf of the corporate defendant absent local counsel. Local counsel re-filed the Motion (ECF No. 30) with a signature and with separate attachments per the Court's Local Rules. In the re-filed attachments, which the Court takes as operative, Exhibit C is a copy of emails. In the original motion, Exhibit C purported to be a copy of the Agreement to Amend Indenture of Mortgage.

jurisdiction and venue issues, which are raised in the Motion to Dismiss, they should be stricken and disregarded. The Defendants appear to agree with the statement of law provided by the Receiver, but contend that the documents they provided relate to the sale of the Parcel and are integral to the complaint.

The Receiver points to numerous authenticity issues with the documents, including that the Lockhart Opinion (which appears to be drawn from litigation in the Southern District of Florida in February 2020) is unauthenticated; that the Lockhart Opinion is incomplete because it refers to an exhibit that is not attached; that the Lockhart Opinion consists of opinion; that the purported Agreement for Sale is incomplete and un-authenticated; that the form of the declaration of the Bowyer Affidavit is incorrect as well as incompetent and irrelevant; that the Appraisal is incomplete and lacks authentication, and appears to be missing 71 pages; and that the Diaz-Cueto Affidavit is replete with the *ad hominem* attacks on the Receiver, as well lacking in foundation and filled with hearsay and opinion. Defendants do not respond to the authenticity challenges the Receiver raises.

The Court considers the low hanging fruit: Defendants' documents, quite simply, are not integral to the Complaint. Assuming the Agreement for Sale is integral, the Receiver has already provided the Court a more complete copy of this document attached to the Complaint, so it need not consider the less-complete copy submitted by Defendants. As for the Affidavits, the Bowyer Affidavit is not notarized, lacks the proper form for a declaration, and contains hearsay including information as to which Bowyer would not have personal knowledge. In any event, it is not "integral" to the Complaint, and the Court will not consider it. Similarly, the Diaz-Cueto Affidavit is full of unprofessional rambling attacks on the Receiver, as well as opinion statements totally unworthy of a member of the legal profession, which Diaz-Cueto apparently is. The Court will not

strike the Diaz-Cueto Affidavit but considers the bulk of this document irrelevant to the Motion to Dismiss. The emails likewise cannot be said to be integral to the Complaint and will be disregarded.

The Lockhart Opinion is likewise not "integral" to the Complaint. At most, it is just that—an opinion purportedly from NLG's former counsel as to Bella Mar's title to the Parcel, based on several assumptions and caveats. It has no place on a Motion to Dismiss. The Appraisal is not only of questionable foundation; like the Lockhart Affidavit it is no more than a statement of opinion, in no way relevant to a Motion to Dismiss. The true state of Bella Mar's title can be explored on summary judgment or at trial.

In short, Defendants' arguments urging dismissal may be addressed without consideration of the attachments to the Motion to Dismiss.

### b. Motion to Dismiss

As stated *supra*, Defendants have filed a Motion to Dismiss with respect to all the Receiver's claim under the Federal Rules of Civil Procedure Rule 12(b); *i.e.* lack of personal jurisdiction, forum non-conveniens, improper venue, and failure to state a claim upon which relief can be granted. Defendants ask for dismissal with prejudice and without leave to amend. Defs.' Br. to Dismiss p. 32. Their arguments and requests will be denied.

i.   <u>Jurisdiction</u>

Under Fed. R. Civ. P. 12(b)(2), a court may dismiss a case for lack of personal jurisdiction over the defendant. "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Alternatively, when "the district court decides

a pretrial personal jurisdiction dismissal motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie case of personal jurisdiction." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993), citing *Combs*, 886 F.2d at 676. The Court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff. *Id.*  Because here the Court has not held an evidentiary proceeding, the Receiver needs only to make a *prima facie* showing that personal jurisdiction exists. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (4th Cir. 2015). Defendants argue that because they do not have minimum contacts with the State of Maryland, the Court lacks specific[11] personal jurisdiction over them.

"Ordinarily, in determining whether a federal court may exercise specific personal jurisdiction over a defendant, the court considers '(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the [plaintiff's] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380, 394 (D. Md. 2019), *citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

But, where a statute authorizes nationwide service of process, "so long as the assertion of jurisdiction over a defendant is compatible with due process, service of process is sufficient to establish personal jurisdiction over the defendant." *In re Sanctuary Belize Litigation*, 409 F. Supp. 3d at 394, *citing ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). A statute providing for nationwide service, therefore, "expands a district court's jurisdiction to the entire

---

[11] Personal jurisdiction over a defendant may be general or specific, with specific jurisdiction available over a defendant when "the suit arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (citations omitted). Alternatively, a court may exercise general jurisdiction over a non-resident defendant who maintains "continuous and systematic" contacts with the forum state, regardless of whether the claims "arise out of" the defendants' activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Neither party contends that the Court has general jurisdiction over Defendants.

country, altering the traditional minimum contacts test that focuses on a defendant's contacts with a particular state and becomes 'a national contacts test.'" *Id., citing United States v. Batato*, 833 F.3d 413, 423 n.3 (4th Cir. 2016) (citation and internal quotation marks omitted). *See also* Fed. R. Civ. P. 4(k)(1)(C) (providing that the service of a summons may establish personal jurisdiction "when authorized by a statute of the United States.").

Here, the Receiver contends that it has statutory authority to effect service of process nationwide pursuant to 28 U.S.C. § 754 and § 1692.[12]  Title 28 U.S.C. § 754 "allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country." *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995). *See also S.E.C. v. Ross*, 504 F.3d 1130, 1145–46 (9th Cir. 2007); *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1105–06 (D.C. Cir. 2004).  Title 28 U.S.C. §1692 provides that where a receiver is appointed for property located in different districts, "process may issue and be executed in any such district as if the property lay wholly within one district." "In short, § 754 authorizes receivers properly appointed in one federal district to sue for, and take possession of, property in other districts, and § 1692 extends the appointing court's

---

[12] 28 U.S.C. § 754, "Receivers of property in different districts," specifically provides as follows:

> Receivers of property in different districts. A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 1692, "Process and orders affecting property in different districts," provides:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

territorial reach to all districts in which receivership property is located. Read together, these statutes allow nationwide service of process for receivers pursuing receivership property*." Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015) (emphasis added and citations omitted). *Compare International Shoe Co. v. Washington*, 362 U.S. 310, 316-17, 66 S.Ct. 154, 158-59, 90 L.Ed. 95 (1945) (due process requires certain "minimum contacts" with the forum such "as make it reasonable . . . to require the corporation to defend the particular suit which is brought there."). This authorization is important, as receiverships created in FTC enforcement actions foreseeably reach national and global entities, and though a case may be brought in one jurisdiction, the swath of entities subject to the receivership may be far and wide.

Defendants argue that these statutes do not apply because, they assert, the statutes confer only *in rem*, not *in personam* jurisdiction. In their view, the Court is obliged to apply the *International Shoe* minimum contacts test looking to the contacts of Defendants with Maryland. Doing so, say Defendants, the Court should find there is no personal jurisdiction because neither Bella Mar, a Bahamian corporation, nor Diez-Cueto, a resident of Florida, has any contacts with Maryland. The Receiver argues that the overwhelming majority of cases hold that the statutes confer *both in rem* and *in personam* jurisdiction. "As with the nationwide service provision in the Securities Act, where a party has been properly served by the Receiver, the Due Process Clause is satisfied because the party has minimum contacts with the United States as a whole." *See Ross,* 504 F.3d at 1146, *citing Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–106, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). In an unpublished opinion, the Fourth Circuit appears to agree with the Receiver: "Several courts of appeals have held that the statutory authorization can be found in 28 U.S.C. § 754 and 1692, which together allow a district court to exercise jurisdiction over a nonresident holder of receivership assets regardless of whether the holder had any contacts

with the forum state." *Receiver for Rex Venture Group LLC v. Banca Comerciala Victoriabank SA*, 843 F. App'x 885, 890 n.1 (4th Cir. 2021), *citing Cornelius*, 786 F.3d at 1318; *Ross*, 504 F.3d at 1145; *Bilzerian*, 378 F.3d at 1103; *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984). *See also Yancey v. Int'l Fid. Ins. Co.*, No. 1:16-CV-0057, 2016 WL 2997375, at *3 (E.D. Va. May 25, 2016) (collecting cases); *id.* ("It is well recognized that these statutes, working together, allow a court to exercise *personal jurisdiction over a defendant* without considering the defendants' minimum contacts with the forum, when doing so complies with due process.") (emphasis added); *Klein V. Abdulbaki*, 2012WL 2317357, 3 (D. Ut. 2012) (holding the "court concludes that the federal receiver statutes provide for nationwide service of process for in personam as well as in rem jurisdiction"; *Quilling v. Cristell*, No. CIV.A. 304CV252, 2006 WL 316981, at *2 (W.D.N.C. Feb. 9, 2006) (noting that Sections 754 and 1692 gave the court *in personam* jurisdiction over out-of-state defendants). *Compare Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 301 (4th Cir. 2001) (district court lacked personal jurisdiction over out-of-district creditors of corporation subject to Receivership seeking to appeal court order; *in rem* jurisdiction does not confer *in personam* jurisdiction absent an express congressional grant of personal jurisdiction).[13]

---

[13] Defendants argue that *Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295 (4th Cir. 2001), in contrast to cases cited by the Receiver, prohibits *in personam* jurisdiction here. *Gilchrist* was before the Court of Appeals in the complicated posture of an appeal by non-party creditors of a district court's orders in a debt-collection action that sought to enjoin a separate Bankruptcy Court action by the creditors. The core question was whether the district court "erred in concluding that its receivership proceeding was not subject to the automatic stay provisions" in a bankruptcy case. *Gilchrist*, 262 F.3d at 302.

In its opinion, the court examined whether the district court had jurisdiction over the non-party creditors of a corporation in receivership and explained that 28 U.S.C. § 754 "provides that a receiver may be appointed for property situated 'in different districts,' who thereby becomes vested with jurisdiction and control over such property . . . But such *in rem* jurisdiction over property in other districts does not give a district court personal jurisdiction over persons in such other districts <u>absent an express congressional grant of personal jurisdiction</u>." *Gilchrist*, 262 F.3d at 301 (emphasis added). The court stated, "While the court has power to protect the res before the court, any injunction entered against individuals is an *in personam* action that may be enforced against individuals only over whom the court has personal jurisdiction." *Id*., *citing R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957–58 (4th Cir. 1999). "Thus, unless the district court had personal jurisdiction over the Georgia creditors and they were served with process, the

This proceeding is ancillary to the Court's appointing Robb Evans, and now Marc-Philip Ferzan, as Receiver in *In re Sanctuary Belize Litigation. See Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362–63 (4th Cir. 2010) (discussing ancillary proceedings in receivership context generally). "Accordingly, the Court's personal jurisdiction analysis turns on an application of 28 U.S.C. §§ 754, 1692, and Federal Rule of Civil Procedure 4(k)(1)(C)." *Yancey*, No. 1:16-CV-0057, 2016 WL 2997375, at *3.

"Establishing personal jurisdiction under these statutes is a multi-step process." *Yancey*, No. 1:16-CV-0057, 2016 WL 2997375, at *3, citing *ESAB Group, Inc.*, 126 F.3d at 626; *Terry v. June*, No. CIV.A. 3:03CV00047, 2003 WL 21738299, at *4 (W.D. Va. July 21, 2003). "First, a 'receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof' if the receiver files copies of the complaint and order of appointment in the district where the property is located within ten days of his appointment." *Id.*, *citing* 28 U.S.C. § 754. "By making those timely filings, the receiver acquires *in rem* jurisdiction over the receivership property. The receiver may then establish personal jurisdiction over non-forum defendants in the receivership court pursuant to Rule 4(k)(1)(C) because 28 U.S.C. § 1692 authorizes nationwide service of process, provided the assertion of jurisdiction is compatible with due process under the Fifth Amendment of the United States Constitution." *Id.*

---

district court could be without power to enforce an injunction against them, unless, of course, they could be shown to have been 'in active concert or participation with' parties over whom the court had jurisdiction." *Id., citing* Fed. R. Civ. P. 65(d). In that case, the out of state creditors had not been served with process.

Therefore, Defendants' contention that the Fourth Circuit has held that the statutes conferring jurisdiction here only confer *in rem* jurisdiction is incorrect. *Gilchrist* merely requires, consistent with the authority cited by the Receiver, that the Court have personal jurisdiction as authorized by statute (which it does, through the combination of sections 754 and 1692 and Rule 4K) and that the Defendants were served with proceed (which they were).

The Parties do not dispute that the Receiver here complied with the statutory requirements of 28 U.S.C. § 754 and § 1692. The Court appointed Robb Evans as Receiver on November 5, 2018, and Robb Evans filed copies of the complaint and appointment order in the District of Maryland within ten days, as required by § 754. Defendants filed a waiver service of process and no Defendant has argued that service was improper. *See* Waiver, ECF No. 8. *Compare Receiver for Rex Venture Grp., LLC v. Banca Comerciala Victoriabank SA*, 843 F. App'x 485, 491, 492 (4th Cir. 2021) (unpublished) (district court lacked personal jurisdiction over Moldovan bank where Receiver seeking funds held at that bank acknowledge it did not serve the bank). Thus, the statutory requirements for personal jurisdiction in this Court are satisfied.

Turning to the minimum contacts, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the [United States]; (2) whether the plaintiffs' claims arise out of those activities directed at the [United States]; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *In re Sanctuary Belize Litigation*, 409 F. Supp. 3d at 394, *citing Carefirst of Maryland, Inc.*, 334 F.3d at 397.

Diaz-Cueto is a United States citizen and a resident of Florida. The Receiver's claims relate to his actions that took place in the United States, i.e., execution of the agreement to sell the Parcel, Diaz-Cueto's receipt of funds from NLG, the issuance of the default notices by Diaz-Cueto to NLG and Diaz-Cueto's retention of the funds paid. Clearly, minimum contacts are met in his case. As for Bella Mar, as the Receiver argues, it appears to have had regular and systematic contracts with the United States, satisfying the personal availment prong. Its president (Diaz-Cueto), a U.S. citizen, met with Andris Pukke, one of the principal Defendants in *In re Sanctuary Belize*. Bella Mar contracted with NLG, a United States corporation doing business in California. Because the

case at bar obviously arises from those contacts, the second prong of the minimum contacts analysis is also satisfied.

Finally, the Court considers whether "the assertion of jurisdiction is compatible with due process under the Fifth Amendment of the United States Constitution." *Yancey*, No. 1:16-CV-0057, 2016 WL 2997375. "In a case in which a federal court is attempting to exercise personal jurisdiction over a defendant pursuant to a statute providing for nationwide service of process, the congressionally articulated policy permitting the assertion of in personam jurisdiction should prevail except in cases of 'extreme inconvenience or unfairness.'" *Terry v. June*, No. CIV.A. 303CV00052, 2003 WL 22125300, at *4 (W.D. Va. Sept. 12, 2003), quoting *ESAB Group, Inc.*, 126 F.3d at 627). "Such cases arise where 'the burden of distant litigation is so great as to put [the defendant] at a 'severe disadvantage.'" *Id.*, quoting *ESAB Group, Inc.*, 126 F.3d at 627).

Here, no jurisdiction other than Maryland can fairly serve as an alternative forum. As for inconvenience to the Defendants. The Court again notes that Diaz-Cueto resides in the United States, and that Bella Mar is wholly owned by Diaz-Cueto. While Diaz-Cueto and Bella Mar may prefer not to litigate in this forum, their preferences do not divest this Court of jurisdiction.[14] Indeed, the alternate forum Defendants identify, discussed further in section II.b.ii., The Bahamas, appears even less reasonable given that Diaz-Cueto resides in the United States. Defendants have not demonstrated "extreme inconvenience" rendering assertion of personal jurisdiction constitutionally unreasonable here.[15]

---

[14] Defendants also argue that the Court lacks *in rem* jurisdiction over the Long Island Parcel, the land subject to the agreement between Defendants and NLG. But, as the Receiver points out, it is not seeking specific performance related to the Parcel; rather, the Complaint seeks money damages based on rescission of contract, breach of contract, fraudulent transfer, unjust enrichment, piercing the corporate veil, and turnover of the funds to the Receiver. The Court does have *in rem* jurisdiction over the funds in question.

[15] The Receiver also asks the Court to strike or disregard the affidavit submitted by Defendants contesting the Court's jurisdiction over them. These purported affidavits claim that Diaz Cueto and Bella Mar have not taken part in any activities enumerated in the Maryland long arm statute. As the Court has already explained, the Maryland long arm

In sum, the Court finds that its jurisdiction over the Defendants is proper.

ii.     Forum non conveniens

Next Defendants urge the Court to dismiss the case on the basis of forum non conveniens, arguing that The Bahamas is the appropriate forum.

"The forum non conveniens doctrine is a common law doctrine now largely limited in federal court to cases where the alternative forum for litigating the dispute is outside of the United States." *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009). Under this doctrine, a district court may dismiss an action in favor of an alternative forum when "the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administration and legal problems." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994) (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)) (internal quotation marks omitted).

In determining whether to dismiss a case for forum non convenience, a "district court must determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011), *citing Piper Aircraft Co.*, 454 U.S. at 241. The burden is on the defendant seeking dismissal. *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984).

As to availability, this factor will ordinarily "be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Jiali Tang*, 656 F.3d at 249, *citing Piper Aircraft Co.*, 454

---

statute is not the basis for jurisdiction here, and Defendants' connection, or lack thereof, to Maryland's long arm statute is of no import to the jurisdictional analysis. Thus, even if Defendants' affidavits were properly before the Court, they would not change the Court's analysis of the jurisdictional question.

U.S. at 255 n. 22. In terms of whether a foreign forum is adequate, that requirement may be met "when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.' " *Id. citing Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007). "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper Aircraft Co.*, 454 U.S. at 254 n. 22.

Finally, if the first two factors are met, a court must then assess convenience in light of the public and private interest factors, including "(1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies." *Compania Naviera Joanna SA*, 569 F.3d at 200 (citations omitted); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 509, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947). "A citizen plaintiff's choice is presumptively convenient . . . and should be overridden only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 802-03 (4th Cir. 2013); *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947). "As long as there is a real showing of convenience by a plaintiff who has sued in his home forum [it will] normally outweigh the inconvenience the defendant may have shown." *DiFederico*, 714 F.3d at 803, *citing Koster*, 330 U.S. at 524.

18

"Granting a motion to dismiss for forum non conveniens rests in the discretion of the district court." *Compania Naviera Joanna SA*, 569 F.3d at 200.

Defendants argue, first, that the Receiver's choice of this forum is not entitled to deference because the Receiver is not a citizen plaintiff; Robb Evans is a California corporation not tied to Maryland.[16] They also argue that The Bahamas can provide adequate and available relief, and that public and private interests weigh in favor of The Bahamas as the appropriate forum to litigate this matter. The Receiver responds that deference to its choice of forum—Maryland, the forum in which it is the appointed Receiver in which capacity it brings this lawsuit—outweighs Defendants' arguments. Additionally, the Receiver contends that the balance of public and private interests weigh in favor of this forum, noting that litigation in The Bahamas may in fact deprive the Receiver of the relief it seeks. The Court considers these arguments.

As for deference afforded to the Receiver, Defendants are correct that "[w]hen the plaintiff's choice is not its home forum," "the presumption in the plaintiff's favor 'applies with less force.'" *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007). But Defendants misguidedly frame this analysis as hinging on the home forum of Robb Evans and Associates, which is California. But Plaintiff here is not Robb Evans, a California entity, but Robbs Evans in the capacity of Receiver appointed by the Court in *In re Sanctuary Belize*. Indeed, the Receiver has changed since the initiation of this lawsuit, with Marc-Philip Ferzan, with the Court's imprimatur, taking over from Robb Evans. To repeat: This case is ancillary to the *In re Sanctuary Belize* proceeding, such that the Receiver's choice of venue for the litigation—logically, the same court where the Receivership has been established—should be afforded deference. *See, e.g., Terry v. Walker*, 369 F. Supp. 2d 818, 822 (W.D. Va. 2005)

---

[16] Presumably Defendants would make a similar objection as to the Successor Receiver, Marc-Philip Ferzan.

(analyzing motion to transfer venue using same factors as forum non conveniens determination and noting that "the court must give substantial weight to the Receiver's choice of forum").

As for the adequacy of the alternative forum, this factor is met if the alternative forum permits litigation of the subject matter in dispute. But it is for Defendants to "show that the alternative forum offers a remedy for the plaintiff's claim[s]." *Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010). *See id.* at 731-732 (reversing dismissal for forum non conveniens where defendant failed to show the cause of action, defamation, was recognized by foreign court). Defendants contend that The Bahamas is an adequate forum because its laws "provide legal remedies related to conveying real Property located in [The Bahamas]." Defs.' Br. p. 17. They assert that all parties "can come within the jurisdiction" of The Bahamas where the parties would not be deprived of any remedies. The Court finds Defendants' argument to be all sail and no anchor. Contradictorily, as the Receiver notes, Defendants' Motion concedes that the laws of The Bahamas in fact do <u>not</u> recognize all of the Receiver's claims, including the claim for rescission. Defs.' Br. 24. Moreover, the Receiver emphasizes that it does not seek specific performance related to the real estate in The Bahamas, but rather, a claim for money. In sum, the Defendants have not shown the Court that The Bahamas would be an adequate forum. They have failed to address the multiple claims at issue in this case and how they could go forward in the Bahamian legal system, as compared to the forum of this Court. Indeed, Defendants fail to demonstrate that the Receiver as such would even be able to bring suit in The Bahamas. It is not NLG, with whom Defendants contracted, that is bringing this case. It is the Sanctuary Belize Receiver.

Since the alleged alternative forum is not adequate, the Court could end its analysis here. But it will nevertheless briefly discuss the balancing of the private and public interests, which

further support the Court's conclusion that the doctrine of forum non conveniens does not support dismissal here.

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; (3) the possibility of view of the premises, if appropriate; and (4) any other practical problems involving efficiency and expense of trial. *See Piper Aircraft Co.*, 454 U.S. at 241 n.6, *citing Gilbert*, 330 U.S. at 508.

These interests clearly tilt in the Receiver's favor. Defendants submit that the "relevant evidence" is in The Bahamas, that the non-party witnesses expected to testify reside in The Bahamas, that there is a lack of compulsory process to bring witnesses to Maryland, and that the cost for doing so would be prohibitive. But Defendants do not specify what "relevant evidence" is in The Bahamas. This case boils down to questions related to contract law, which will presumably involve the sales contract in question and the testimony of the parties thereto. The Court does not anticipate that substantial relevant evidence is in The Bahamas. The land subject to the Agreement, of course, is in The Bahamas, but again, as the Complaint makes clear, the Receiver does not seek specific performance related to the land, but rather a return of funds, the majority of which are in the possession of Diaz-Cueto, who resides in Florida. Moreover, the likely witnesses are United States residents, with the sole exception of Elliott Lockhart, the attorney for NLG who assisted in negotiating the deal; two of three parties (Diaz-Cueto and the Receiver) are United States residents. In terms of expense, the cost of litigating in The Bahamas would not only be costly to the Receiver and receivership estate, they would likely increase the costs for Defendants since Diaz-Cueto resides in the United States. But to return to fundamentals:  The Receiver selected this forum because this matter is ancillary to the *In re Sanctuary Belize Litigation*. Forcing the Receiver to

21

litigate in The Bahamas (or in varying places around the world) would be a significant burden in an already complex case.  In a word, private factors weigh in favor of a forum in the United States.

As for the public factors, these include administrative difficulties, local interest in the controversy, the avoidance of conflict of laws or the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Piper Aircraft Co.*, 454 U.S. at 241 n.6. Defendants argue that The Bahamas has a "profound interest" in adjudicating the validity of the agreement for the sale of real property located in The Bahamas. They also state that the time and cost of obtaining testimony from unwilling foreign witnesses would burden this Court, and that the Agreement contains a choice of law clause designating the laws of The Bahamas as operative, creating a potential conflict of laws issue if the case proceeds in this forum. Finally, Defendants argue there is no basis for Maryland citizens to hear and decide this case. Local (Maryland) interest in the case, they suggest, is low.

The Receiver responds that any interest The Bahamas may have in this case is low, again since ownership of the Parcel is not at issue. In contrast, the documents relative to the agreement were negotiated in the United States by United States citizens. Most fundamentally, there are substantial reasons for the case to proceed in this Court, ancillary as it is to the *In re Sanctuary Belize Litigation*. Requiring the Receiver to proceed in a foreign jurisdiction would complicate matters, increase costs, and might would apparently preclude the Receiver from litigating all of its claims.

The Court finds that public factors also weigh against dismissal of this case on the basis of forum non conveniens. The Receiver is statutorily permitted to bring this case in this jurisdiction, which has a substantial interest in the matter in light of the massive *In re Sanctuary Belize Litigation* already undertaken here. The evidence in this case consists of evidence related to

contract formation and contract interpretation, and evidence related to the provenance and transfer of the funds, and key evidence is available in this district. *See, e.g., Carney v. Beracha*, 996 F. Supp. 2d 56, 72-73 (D. Conn. 2014) (denying dismissal of receivership case on the basis of forum non conveniens). To the extent that one witness who resides in The Bahamas may be unwilling to travel to this district, that does not outweigh the overall efficiencies and preference of the Receiver to proceed here. There is no basis to dismiss this case based on forum non conveniens.

      iii.   <u>Venue</u>

Defendants also seek dismissal on the basis of improper venue, arguing that the bases for venue under 28 U.S.C. § 1391(b) are not satisfied. When venue is challenged on a motion to dismiss, the burden is on the plaintiff to make a *prima facie* showing of proper venue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012). The Court construes all factual allegations in favor of plaintiff. *Id.*

Normally, venue is determined under 28 U.S.C. § 1391(b), which provides that a civil action may be brought:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendants argue that venue is improper because the Agreement at issue was not executed in Maryland; Defendants are not residents of Maryland; and the parcel is located in The Bahamas. Defendants also point to the forum selection clause of the Agreement, which appears to select the venue of The Bahamas.

But, as the Receiver points out, this case "need not satisfy the section 1391(b)['s] general venue requirements . . . because this proceeding is ancillary to the appointment of a receiver and personal jurisdiction is proper." *Yancey*, No. 1:16-CV-0057, 2016 WL 2997375, at *5, *citing Bilzerian*, 378 F.3d at 1104 ("[T]he district court correctly concluded that, because the receiver's complaint was brought to accomplish the objectives of the Receiver Order and was thus ancillary to the court's exclusive jurisdiction over the receivership estate, venue was properly established."); *Haile v. Henderson Nat. Bank*, 657 F.2d 816, 822 n.6 (6th Cir. 1981) ("[W]here jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("The laying of venue . . . is authorized by 28 U.S.C. § 754, which allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country."); *Hodgson v. Gilmartin*, No. CIV A 06-1944, 2006 WL 2707397, at *7 (E.D. Pa. Sept. 18, 2006).

As for the forum selection clause, as the Receiver points out, the Agreement attached to both the Complaint and the Motion to Dismiss appear to be incomplete, as each lacks certain signatures. The clause as written in the Agreement attached to the Complaint states:

> This Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the law of The Commonwealth of the Bahamas, and venue shall be in the Commonwealth of the Bahamas. Compl. Ex. 1 ¶ 12.

Indeed, without a fully executed agreement, the Court cannot be certain that it possesses the whole agreement from which to interpret the forum selection clause. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 834, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995) (O'Conner, J. with Thomas, J., concurring in part) ("Courts cannot enforce private agreements without reference to those policies, because those policies define the role of courts in deciding disputes concerning private agreements.").

But even if the Agreement were complete, the Court still concludes that the forum selection clause here must be construed as permissive, in the same way courts routinely deal with such clauses in bankruptcy cases. *See, e.g., In re Dozier Fin., Inc.*, 587 B.R. 637, 648-51 (Bankr. D.S.C. 2018) (denying motion to transfer case filed by bankruptcy Trustee against defendant alleged to have caused losses in debtor's business; mandatory forum selection clause between debtor and defendant trumped by public interest factors favoring Trustee proceeding with ancillary case in same district as underlying bankruptcy proceeding). As the Receiver notes, where a forum selection clause is permissive rather than mandatory, dismissal on the grounds that the plaintiff filed suit in a forum other than the forum identified in the forum selection clause does not justify dismissal. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018), *as amended* (Mar. 27, 2018). The Receiver argues that, like the clause in the *BAE* case, the clause identified by the Defendants here does not confer "exclusion language" that would render it a mandatory forum selection clause. *Compare id.* at 472 (forum selection clause permissive where it stated that disputes "shall be resolved though litigation and the Seoul Central Court shall hold jurisdiction"). The Court agrees. Moreover, dismissing this case for improper venue would lead to piecemeal litigation between this Court and Bahamian Courts (if that case could even proceed in The Bahamas), contrary to the mandate of the Receivership to centralize the marshalling of assets for defrauded consumers. *See, e.g., Carney*, 996 F. Supp. 2d 56, 71 (in receivership action, district court refused to enforce forum selection clause where doing so would lead to piecemeal litigation in multiple fora).

There is no basis to dismiss this case based on improper venue.

iv.    <u>Failure to state a claim</u>

Defendants next move to dismiss the Receiver's claims for failure to state a claim.

Under Fed. R. Civ. P. 12(b)(6), the relevant inquiry is whether the complaint has sufficiently pleaded factual allegations that, taken as a whole, state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Moise v. Howard Cnty. Det. Ctr.*, No. CV RDB-18-1355, 2019 WL 454101, at *2 (D. Md. Feb. 4, 2019), *aff'd,* 807 F. App'x 272 (4th Cir. 2020). When evaluating a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true, and are viewed in the light most favorable to the plaintiff. To be sure, conclusory statements or a "formulaic recitation of the elements of a cause of action," will not suffice. *Bell Atlantic Corp.*, 550 U.S. at 555.

a.   Choice of Law

As a threshold issue, Defendants contend that the claims in this case are governed by the laws of the Bahamas, as set forth in a choice of law provision in the Agreement between NLG and the Defendants. The Receiver responds that, as with the forum selection clause, the Court is not obliged to enforce any choice of law provision that may be in the Agreement because, in the first place, Defendants have not submitted to the Court complete copies of the Agreement and the other Deal Documents. In any event, as the Receiver notes, the choice of law provision, if enforceable, would only govern the contract-related claims, not the tort claims in this case. Splitting the causes of action would make little sense.

Assuming arguendo, that the Agreement before the Court is complete, the Court would still apply the choice of law rules of its forum, here Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941). Under Maryland law, a choice of law provision will be honored unless "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the forum state precludes the application of the . . . provision." *Am. Motorists Ins. Co. v. ARTRA Grp.,*

*Inc.*, 338 Md. 560, 572, 659 A.2d 1295, 1301 (1995). The Receiver argues that the selection of Bahamian law must give way to the public policy interest of applying, in this case, California law to the Receiver's contract and tort claims. *See* Resp. 22. The Court agrees.

Defendants themselves have stated that the law of The Bahamas does not recognize a claim for rescission of a contract. *See* Defs.' Br. 22. That being the case, it weighs against applying the choice of law provision. *See, e.g., Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.*, 368 F. Supp. 2d 450, 458-59 (D. Md. 2005) (declining to honor choice of law provision where doing so would use state law that would not protect franchisee that would be protected under Maryland law). Moreover, Defendants have not made a showing that each of the Receiver's claims could be brought in The Bahamas; they have pointed to no specific Bahamian laws or cases to suggest they could. Rather, Defendants simply declare "The Bahamas is a stable parliamentary democratic country with a highly functional court system and independent judiciary." Defs.' Br. 22. The public interest in this case requires greater assurances that the case, as the Receiver puts it, could in fact proceed in The Bahamas.

Having decided not to apply the law of The Bahamas, the Court must identify the proper law applicable to each claim the Receiver asserts. Maryland courts apply the rule of *lex loci contractus* to matters of validity and contract interpretation. *See American Motorists Ins. Co.*, 338 Md. 560 *So.*, 338 Md. At 573. "A contract is made in the place where the last act occurs necessary under the rule of offer and acceptance to give the contract a binding effect." *Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md.Add. 542, 549 (2007) (citation omitted). As the Receiver notes, the Agreement attached to the Complaint is signed by both Bella Mar and NLG, with the date of NLG's signature coming after that of Bella Mar's. Therefore, it appears that the last act related to the contract was the signing by NLG, and at a time when NLG's officer was based in California.

27

Accordingly, under Maryland's conflict of law rules, California law would apply to the contract claims, namely, rescission (Count 1) and breach of contract (Count 2). The remaining seven claims, all of which are tort claims,[17] are governed by the law of the state where the event giving rise to the tort occurred. *See Philip Morris Inc. v. Angeletti*, 358 Md. 689,746, 752 A.2d 200, 230–31 (2000) (Maryland law applies the law of the state where the injury occurred; *lex loci delicti*). Here, the allegedly fraudulent transfers allegedly occurred in California, such that California law would apply to the Receiver's claims for avoidance of fraudulent transfer (Counts 3 – 6); unjust enrichment (Count 7);[18] and piercing the veil (Count 8).[19] As the Receiver notes, Count 9, which seeks turnover of the receivership property based on the Court's own orders, does not depend on the substantive law of any particular state.

b.  Rescission

Defendants argue that the Receiver's claim for Rescission, Count 1, must be dismissed for failure to state a claim.

Under California law, a contract that is unconscionable or illegal is subject to rescission. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 281, 27 P.3d 702 (2001), *as modified* (Sept. 12, 2001); Cal. Civ. Code § 1689 (b)(5). Mutual mistake is another ground for rescission by the party harmed. Cal. Civ. Code. § 1689 (b)(1). *See, e.g., Guthrie v. Times-Mirror Co.*, 51 Cal. App. 3d 879, 884, 124 Cal. Rptr. 577 (Ct. App. 1975). The Complaint contends that the agreement between NLG and Defendants is unconscionable or illegal because, *inter alia*, it provided for a grossly inflated price

---

[17] The Receiver notes that it is unclear if Maryland considers fraudulent transfer claims as sounding in tort or contract. *See In re TMST, Inc.*, 610 B.R. 807, 819 (Bankr. D. Md. 2019) (if considered as a tort claim, location of injury suffered by corporation is considered to be its principal place of business). Regardless, if considered a tort claim, or a contract claim, the law of California also applies to the claims of fraudulent transfer.

[18] *See RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (applying doctrine of lex loci delicti to unjust enrichment claim).

[19] Again, *lex loci delicti* dictates that California law should apply.

for the Parcel and used funds misappropriated from Sanctuary Belize lot purchasers. *See* Compl. ¶¶ 51, 52, 60-62, 81, 82. As for mutual mistake, the Receiver, points to three instances. First, the parties "actually intended for a stock sale conveying the real estate through the sale of its owner Bella Mar, as opposed to the direct sale of the real estate as set forth in the Agreement." Resp. p. 26; Compl. ¶¶ 48-50, 82. Second, "the parties believed structuring the same in that manner would avoid the significant Bahamian stamp tax on real estate sales." Resp. p. 26; Comp. ¶¶ 51, 82. Third, "the parties believed [NLG] was authorized to own real estate in the Bahamas when it was not." Resp. p. 26; Compl. ¶¶ 52, 82.

Notably, Defendants make their arguments based on Maryland's law of rescission. It is Defendants' position that the Agreement between Bella Mar and NLG was a valid, bona fide, legal, arms-length transaction and that therefore the doctrine of rescission does not apply. They say that NLG was given a purchase price below market value, which they say was approximately $6 million, and that it was NLG that breached the contract by failing to continue to make payments. They also assert that the Receiver is incorrect in its contention that the funds used to pay Bella Mar were funds drawn from SBE; the funds, they say, came from one Matthew Bowyer, who has no connection to SBE. Defs.' Br. p. 26.

Defendants insist that their agreement with NLG was bona fide. But this, as the Court reminds, is a Motion to Dismiss for failure to state a claim. Defendants have not shown that the Receiver has failed to adequately plead a claim for rescission. Moreover, the "facts" Defendants submit to counter the allegations in the Complaint—namely, that the value of the Parcel may have exceeded the purchase price and that the funds paid to Defendants came from Bowyer rather than lot purchases—not only rely on the exhibits the Court has already disregarded; they are, at most, differences of opinion, irrelevant to the Motion to Dismiss before the Court.

In its Motion for Order Determining that Funds Turned Over to the Temporary Receiver from [NLG]'s Bank Accounts May be Used for All Receivership Purposes in the *In re Sanctuary Belize Litigation*, the Receiver demonstrated to the Court's satisfaction that, *inter alia*, one of NLG's bank accounts held funds "exclusively from consumers who made payments in connection with the Reserve" (i.e., Sanctuary Belize lot purchasers); and that these funds were sourced from Receivership Entities Buy International, Inc., Eco-Futures Development, and Global Property Alliance, Inc. ECF No. 453 Ex. 2 ¶ 11. The Receiver found that $1,065,000 of this account had been paid "to acquire land in the Bahamas for another real estate development project unrelated to [Sanctuary Belize]." *Id.* ¶ 12. The Court granted the Receiver's Motion seeking turnover NLG funds on June 21, 2019. ECF No. 507. Against this evidence, Bowyer's affidavit and the Defendants' claims, even if relevant, would be at best of doubtful reliability.

But in any event, as pled, the Receiver has adequately stated a claim for rescission.

c.   Breach of Contract

Defendants argue that the Court should dismiss the Receiver's claim for breach of contract (Count 2). Under California law, breach of contract consists of four elements: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff." *Hamilton v. Greenwich Invs. XXVI, LLC*, 195 Cal. App. 4th 1602, 1614, 126 Cal. Rptr. 3d 174 (2011), *as modified* (June 15, 2011) (citations omitted).

Defendants' view, in short, is that it was NLG, and not Defendants who breached the contract by failing to timely make their November 2018 payment. Again, this amounts to an argument that Defendants believe that factually the Receiver cannot sustain its claim, not that it has failed to adequately plead the claim.

The Receiver has alleged that NLG performed under the contract, and that it was Bella Mar that materially breached the contract by "(i) improperly and prematurely issuing the November Notice of Default; (ii) improperly requiring [NLG] to cure any payment default in 21-days; and (iii) to the extent that the 21-day period was the applicable deadline, by not allowing [NLG] the full 21-days to cure the defaults; and (iv) by taking the position that ownership of the [real estate] reverted back to Bella Mar, and doing so without any support in the Deal Documents or Amended Mortgage, without any court action or without any formal notice or other action other than two emails; and [(v)] by violating the stay against creditor action imposed by the TRO." Comp. ¶¶ 88-91. As a result, the Receiver alleges, NLG suffered $1,065,000 in damages.

Yet again Defendants' arguments that it was NLG, not they, that breached the contract in no way shows how, as pled, the Breach of Contract claim is insufficient. The Receiver has adequately pled breach of contract by Defendants. There is no basis to dismiss this claim.

d.  Fraudulent Transfer

Defendants also challenge the Receiver's four claims under the California Uniform Voidable Transactions Act ("CUVTA"), Cal. Civ. Code § 3439 et seq., for fraudulent transfer (Counts 3, 4, 5, and 6). Count 3 alleges a voidable transfer on the basis that the payment by NLG to Bella Mar was "actually" fraudulent, while Counts 4 to 6 allege various claims of "constructive" fraud. Defendants argue, first, that these claims should be dismissed because California law does not apply. They maintain their view that the applicable law in this case is the laws of The Bahamas. The Court has rejected this premise already.

Defendants go on to argue that if California law applies, the Receiver has still failed to state a claim for each of its counts under the CUVTA. First, Defendants argue that, as to Count 3, which alleges actual fraud under Section 3439.04(a)(1) of the CUVTA, the claim may not be

maintained because an exception applies—namely, that the transfer is not voidable because it was taken "in good faith and for a reasonably equivalent value." CUVTA § 3439.08. The Receiver responds that argument is actually an affirmative defense, to be raised as such and which requires proof by the preponderance of evidence. *See* Cal. Civ. Code § 3439.08(g); *Nautilus, Inc. v. Yang*, 11 Cal. App. 5th 33, 40, 217 Cal. Rptr. 3d 458 (2017) (whether transferee acted in good faith and gave reasonably equivalent value is a question of fact requiring proof by preponderance of the evidence). The Receiver is correct that this line of argument is an affirmative defense, and is not properly raised through a motion to dismiss.

Defendants next argue as to all the fraudulent transfer claims that the Receiver is not a "creditor" of NLG, and therefore cannot bring a cause of action under the CUVTA. The Receiver agrees that it is not a "creditor" of NLG but argues that it nonetheless has standing as the Receiver to bring suit for fraudulent transfer actions on behalf of Receivership Entities, including NLG, to recover money for the harmed creditors of those Entities, i.e., the Sanctuary Belize lot purchasers. *See Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (equity receiver has standing to sue to redress injuries and to sue on behalf of creditors of the entity in receivership); *Donell v. Kowell*, 533 F.3d 762, 770-71 (9th Cir. 2008) (equity receiver may bring "actual" and "constructive" fraudulent transfer suits), cert. denied, 555 U.S. 1047. The Court agrees with the Receiver. Whether or not the Receiver is a creditor of NLG is inapposite. The Receiver may bring its fraudulent transfer claims based on its standing to bring actions on behalf of Receivership Entities.

Finally, Defendants argue that the Receiver cannot maintain its fraudulent transfer claims because, they allege, the funds used to pay Bella Mar did not come from SBE but rather Matthew Bowyer, and "independent investor." This argument has also been rejected previously. There is no basis to dismiss the fraudulent transfer claims for failure to state a claim.

32

e.  Unjust Enrichment

Defendants also seek dismissal of the Receiver's unjust enrichment claim (Count 7) for failure to state a claim, Rule 12(b)(6). Unjust enrichment consists of "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000). The Complaint alleges that that it was unjust for Bella Mar to receive the benefit of the transfers from NLG and then issue the November Notice of Default and then take the position that ownership of the Parcel reverted to Bella Mar, all the while retaining the funds NLG already paid. Compl. ¶ 119.

Here, as before, Defendants do not argue that the Receiver has failed to state a claim; rather, they suggest that, in fact, there was no unjust enrichment because the value of the Parcel exceeded the purchase price, and therefore NLG received a substantial benefit from the transaction. They further argue that Bella Mar took the parcel off the market, a benefit to NLG for which NLG paid its deposits. In Defendants' view, the retention of the deposits is just compensation for the "loss suffered by Bella Mar as a result of Newport's breach." Defs.' Br. p. 29.

The music goes round and round: The Receiver argues that Defendants' assertion that the value of the parcel exceeded the price must be disregarded because the value of the Parcel is a question of fact for determination at a later phase of these proceedings. The Court agrees.

This is a Motion to Dismiss. Defendants simply have in no way challenged the adequacy of the Receiver's pleadings. Their request to dismiss the unjust enrichment claim for failure to state a claim is rejected.

f.  Piercing the Corporate Veil

Count 8 of the Complaint asks for the Court to "pierce the corporate veil." It alleges that Diaz-Cueto was and is the alter ego of Bella Mar and that the Court should pierce the corporate

veil of Bella Mar and hold Diaz-Cueto personally liable for any and all monetary or other relief ordered. Compl. ¶ 124.

Defendants argue this claim should be dismissed because, in their view, to maintain such a claim the Receiver must allege fraud, and moreover, the claim is "contradicted by the independent appraisal" claiming to show the Parcel was valued at $6 million, undermining the Receiver's claim that Bella Mar was a shell company with no assets. This argument is rejected.

Under California law, there are two requirements for disregarding the corporate entity: first, there must be a sufficient unity of interest and ownership between the corporation and the individual or organization controlling it such that the separate personalities of the individual and corporation no longer exist, and second, that treating the acts as those of the corporation alone would sanction a fraud, promote injustice, or cause an inequitable result. *Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 900, 88 Cal. Rptr. 2d 594 (1999).

The Receiver has alleged that Diaz-Cueto is and was the alter ego of Bella Mar because: (1) Bella Mar had grossly inadequate capital; (2) Bella Mar was a shell company with no assets other than possible ownership of rights to the Long Island Parcel, no business operations and/or no employees; (3) Bella Mar failed to observe formal legal requirements for conducting business as a corporation; (4) Diaz-Cueto disregarded the separate corporate existence of Bella Mar; and (5) Bella Mar was owned, dominated and controlled by Diaz-Cueto who operated Bella Mar for his personal benefit. Moreover, the "shareholders" of Bella Mar were office workers in the law office of Diaz-Cueto's Bahamian lawyer. Compl. ¶¶ 13, 24, 25, 26, and 123. As for fraud, that is, at bottom, what this case is all about. The Receiver has alleged that Defendants' retention of illicit funds—which the Receiver has evidence from NLG showing were the funds of Sanctuary Belize lot purchasers—would promote injustice, and would be inequitable, and, to boot, they were paid

34

for a grossly overpriced lot, sold pursuant to an ambiguous Agreement that was later wrongfully terminated by Diaz-Cueto.

The Receiver's pleadings allege unity of interest between Bella Mar and Diaz-Cueto. Treating the acts solely as that of Bella Mar as opposed to joint and several with the acts of Diaz-Cueto, according to the Complaint, would sanction a fraud, promote injustice, or cause an inequitable result, particularly given that the Receiver has alleged that Diaz-Cueto personally received $881,245 of the $1,065,000 million payment, and that Bella Mar's only asset is the Parcel. Whether the facts will ultimately sustain the Receiver's allegation that, for instance, Bella Mar had inadequate capital, or as Defendants contend, that the Parcel was really worth $6 million, even if relevant, are matters for summary judgment of that, or trial. But they provide no basis whatsoever to dismiss Count 8.

g.   Turnover of Receivership Property

Finally, Defendants move to dismiss the Receiver's Count 9, which seeks turnover of Receivership property. This Count asserts that Defendants' taking control of NLG's asset—the Parcel—violated this Court's orders relative to the Receivership and TRO, and that the funds paid by NLG should be turned over to the Receiver pursuant to those Court orders. Compl. ¶ 127-128.

Defendants repeat their contention that the funds are not properly Receivership property because they were not derived from funds of lot purchasers but from Bowyer's investment. Again, that may be Defendants' belief on the merits; but it is no basis for dismissal.

The Court has already determined that NLG's assets, including the funds transferred to Bella Mar, were Receivership Property. *In re Sanctuary Belize*, ECF No. 507. Defendants have presented no evidence that dispositively establishes that the property the Receiver seeks is not

Receivership property.  Defendants' argument that the Receiver 's request for a turnover of funds should be dismissed is rejected.

### III.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF Nos. 12; 30, is **DENIED**.

A separate order will **ISSUE**.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

August 9, 2022

36